[No. 51001-1-I. Division One. February 17, 2004.]

*In the Matter of the Parentage of* C.A.M.A., CHRISTIAN E. APPEL, ET AL., *Respondents*, HERLINDE APPEL, *Appellant*.

---

[15] Ex. 8.

*Charles K. Wiggins* and *Kenneth W. Masters* (of *Wiggins & Masters, P.L.L.C.*) and *Mark T. Patterson II*, for appellant.

*Christine S. Norton*, pro se.

*David A. Kastle* (of *Law Office of David A. Kastle*) and *Jordan Gross* (of *Yarmuth Wilsdon Calfo, P.L.L.C.*), for respondent Christian E. Appel.

*Christine O. Gregoire, Attorney General, Narda Pierce, Solicitor General*, and *William B. Collins, Senior Assistant*, on behalf of the Attorney General's office, amicus curiae.

*Marc T. Christianson* and *J. Mark Weiss* on behalf of the Washington State Bar Association, amicus curiae.

GROSSE, J. — Washington's current third party visitation statute, RCW 26.09.240, requires a nonparent seeking visitation to show a significant relationship with the child by clear and convincing evidence, as necessary predicate, and allows a petition by a nonparent only in the circumstance that the child's parent or parents have already commenced an action for dissolution of marriage, legal separation, or modification of a parenting plan. These essential conditions in the current statute distinguish it from that at issue in prior cases, *In re Custody of Smith* and

*Troxel v. Granville*.[1] Therefore, the current statute provides a constitutional basis for consideration of Herlinde Appel's petition for visitation of the granddaughter who had lived with her for the last five of her seven years. The trial court's conclusion to the contrary is reversed.

## FACTS

C.A.[2] was born on December 25, 1992 in San Diego, California. She is the daughter of Christine Sue Norton and Christian Appel who ended their relationship after C.A.'s first birthday. She then lived with her father. After a year and a half, Christian and C.A. moved to his parents' home in Germany and they lived there for the next two years with Herlinde and Joachim Appel, who helped care for C.A. while her father worked.

In 1997, C.A., her grandparents, and Christian came to the United States to visit Christian's sister. At that time Christian informed his parents that he and C.A. would remain in the United States. His parents convinced him that it would be less disruptive for C.A. if she returned to Germany with them until Christian was suitably established.

In 1999, Christian informed his parents that he was engaged to be married and was coming to get C.A. to live with him and his new family in Snohomish, Washington. C.A. attended her father's July 2000 wedding with her grandparents. Afterwards, the grandparents left C.A. with Christian while they traveled to visit friends. In their absence, Christian filed a parentage action in Snohomish County Superior Court to establish his paternity of C.A. He located and served C.A.'s mother in Port Townsend, Washington, and obtained her agreement to a temporary parenting plan.

---

[1] *In re Custody of Smith*, 137 Wn.2d 1, 969 P.2d 21 (1998), *aff'd sub nom. Troxel v. Granville*, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000).

[2] The minor child will be referenced by the initials C.A. in this opinion.

Christian's petition stated that C.A. currently resided with him. He did not mention C.A.'s grandparents, and he did not disclose his daughter's past residence in Germany with them. A court commissioner approved the temporary parenting plan on August 7, 2000. When C.A.'s grandparents returned to collect her for their return trip to Germany, Christian presented them with a court document giving him custody of C.A. Herlinde filed a petition in the Snohomish County Superior Court to intervene. After a lengthy series of appeals, including an unpublished decision, this court remanded the matter to the trial court.[3]

On remand, Herlinde petitioned for visitation, asserting that without court intervention she might not be allowed to see her granddaughter. Christian moved to dismiss the petition. The trial court specifically found that C.A.'s parents were not unfit and that under these facts there was no basis to grant visitation to the grandparents.[4] The court granted Christian's motion to dismiss Herlinde's petition. Herlinde now seeks review of that determination.

1. Third party visitation actions are governed by RCW 26.09.240

The conflict in this case arises in the court's December 3, 2001 oral decision[5] wherein the trial court interpreted *Smith* and *Troxel* as holding that "parents enjoy . . . a fundamental, constitutional, substantive right to exercise in an unfettered manner their discretion as to who their child has contact with and who the child does not have contact with." But this is too broad a reading of those cases.

The current RCW 26.09.240, as amended in 1996, addresses a court's authority to award visitation to nonparents by permitting a nonparent to seek visitation with a child. The statute provides:

[3] *In re Parentage of C.A.M.A.*, noted at 103 Wn. App. 1032, 2000 WL 1726964.

[4] *See Smith*, 137 Wn.2d 1.

[5] The order dismissing Herlinde's petition filed January 22, 2002, included an attachment of the transcript of the court's December 3, 2001 oral decision outlining its reasoning.

(1) A person other than a parent may petition the court for visitation with a child at any time or may intervene in a pending dissolution, legal separation, or modification of parenting plan proceeding. A person other than a parent may not petition for visitation under this section unless the child's parent or parents have commenced an action under this chapter.

(2) A petition for visitation with a child by a person other than a parent must be filed in the county in which the child resides.

(3) A petition for visitation or a motion to intervene pursuant to this section shall be dismissed unless the petitioner or intervenor can demonstrate by clear and convincing evidence that a significant relationship exists with the child with whom visitation is sought. If the petition or motion is dismissed for failure to establish the existence of a significant relationship, the petitioner or intervenor shall be ordered to pay reasonable attorney's fees and costs to the parent, parents, other custodian, or representative of the child who responds to this petition or motion.

(4) The court may order visitation between the petitioner or intervenor and the child between whom a significant relationship exists upon a finding supported by the evidence that the visitation is in the child's best interests.

(5)(a) Visitation with a grandparent shall be presumed to be in the child's best interests when a significant relationship has been shown to exist. This presumption may be rebutted by a preponderance of evidence showing that visitation would endanger the child's physical, mental, or emotional health.

(b) If the court finds that reasonable visitation by a grandparent would be in the child's best interest except for hostilities that exist between the grandparent and one or both of the parents or person with whom the child lives, the court may set the matter for mediation under RCW 26.09.015.

(6) The court may consider the following factors when making a determination of the child's best interests:

(a) The strength of the relationship between the child and the petitioner;

(b) The relationship between each of the child's parents or the person with whom the child is residing and the petitioner;

(c) The nature and reason for either parent's objection to granting the petitioner visitation;

(d) The effect that granting visitation will have on the relationship between the child and the child's parents or the person with whom the child is residing;

(e) The residential time sharing arrangements between the parents;

(f) The good faith of the petitioner;

(g) Any criminal history or history of physical, emotional, or sexual abuse or neglect by the petitioner; and

(h) Any other factor relevant to the child's best interest.

(7) The restrictions of RCW 26.09.191 that apply to parents shall be applied to a petitioner or intervenor who is not a parent. The nature and extent of visitation, subject to these restrictions, is in the discretion of the court.

(8) The court may order an investigation and report concerning the proposed visitation or may appoint a guardian ad litem as provided in RCW 26.09.220.

(9) Visitation granted pursuant to this section shall be incorporated into the parenting plan for the child.

(10) The court may modify or terminate visitation rights granted pursuant to this section in any subsequent modification action upon a showing that the visitation is no longer in the best interest of the child.

■ As a preliminary matter, we note that RCW 26.09.240 has an apparent internal inconsistency. In the first sentence it states that a nonparent may petition for visitation at any time, but in the second sentence the statute states that a nonparent may petition for visitation only when either of the child's parents has begun an action under chapter 26.09 RCW. The legislature enacted this statute before *Smith* and *Troxel* invalidated nonparent visitation under RCW 26.10.160. We believe the first sentence merely refers to the fact that when the statute was written, a petitioner could bring a petition at any time, only not under chapter 26.09 RCW. Accordingly, this first sentence is not internally inconsistent with the statute.

RCW 26.09.240 limits who may petition for visitation by requiring that any nonparent seeking visitation shows that he or she has a significant relationship with the child. To achieve this, the petitioner must establish "by clear and convincing evidence that a significant relationship exists with the child."[6] The statute also limits when a person may bring an action for visitation. Currently, a "person other than a parent may not petition for visitation under this section unless the child's parent or parents have commenced an action under this chapter."[7] Such actions include dissolution of marriage, legal separation, or modification of a parenting plan proceeding.[8]

█ RCW 26.09.240(5)(a) presumes that visitation between a child and a grandparent is in the best interests of a child, but only if the grandparent has already established by clear and convincing evidence that he or she has a significant relationship with the child. We read this to allow a presumption only when the grandparents demonstrate such an interest. Thus, there is an initial burden that a grandparent must meet to show such a relationship. And, there is nothing constitutionally untoward in presuming, as RCW 26.09.240 does, that the best interests of the child will be served by continuing the relationship through visitation as determined appropriate under the relevant statutory standards.

The statute also contains a list of factors that the trial court must consider when determining the child's best interests. Among the factors the court considers are the strength of the relationship between the child and the petitioner, the relationship between the child's parents and the petitioner, the nature and reason for the parent's objection to visitation, and any criminal history or history of physical, emotional, or sexual abuse or neglect by the petitioner. Additionally, the restrictions that apply to par-

---

[6] RCW 26.09.240(3).

[7] RCW 26.09.240(1).

[8] RCW 26.09.240(1).

ents under RCW 26.09.191 also apply to a petitioner or intervenor who is not a parent.[9]

### 2. Former RCW 26.09.240 and RCW 26.10.160(3)

In the case of *In re Custody of Smith*,[10] the Washington Supreme Court declared former RCW 26.09.240 (prior to 1996 amendments) and RCW 26.10.160(3) unconstitutional. The court concluded the statutes serve no compelling state interest that would justify state interference in a parent's child-rearing decisions.[11] The court noted that Washington courts allowed state interference with child-rearing decisions "only when 'parental actions or decisions seriously conflict with the physical or mental health of the child.'"[12]

The *Smith* court explained that the statutes at issue, former RCW 26.09.240 and RCW 26.10.160(3), contained no requirement that by denying visitation, the child would be harmed.[13] The court explained that the "best interest of the child" standard as contained in the statute was "insufficient to serve as a compelling state interest overruling a parent's fundamental rights."[14] Secondly, there was no requirement that the petitioner establish that he or she had a substantial relationship with the child,[15] recognizing that "in certain circumstances where a child has enjoyed a substantial relationship with a third person, arbitrarily depriving the child of the relationship could cause severe psychological harm to the child."[16]

---

[9] RCW 26.09.240(7).

[10] *Smith*, 137 Wn.2d 1.

[11] *Smith*, 137 Wn.2d at 19-20.

[12] *Smith*, 137 Wn.2d at 18 (quoting *In re Welfare of Sumey*, 94 Wn.2d 757, 762, 621 P.2d 108 (1980)).

[13] *Smith*, 137 Wn.2d at 20.

[14] *Smith*, 137 Wn.2d at 20.

[15] *Smith*, 137 Wn.2d at 20-21.

[16] *Smith*, 137 Wn.2d at 20.

The court concluded that the "best interest of the child" standard was "insufficient to serve as a compelling state interest overruling a parent's fundamental rights. State intervention to better a child's quality of life through third party visitation is not justified where the child's circumstances are otherwise satisfactory."[17]

■ The United States Supreme Court granted review in *Troxel v. Granville*.[18] The plurality opinion in *Troxel* supplies the narrowest rationale for the Supreme Court's judgment.[19] Accordingly, the plurality's applied analysis is the court's holding, and is the controlling law on the issue before us.[20]

The *Troxel* Court examined what considerations were sufficiently important to allow a court to impose visitation over parental objection, expressly declining to consider the primary constitutional question passed upon by the Washington Supreme Court: "whether the Due Process Clause requires all nonparental visitation statutes to include a showing of harm or potential harm to the child as a condition precedent to granting visitation."[21] Accordingly, the Court did not define the precise scope of the parental due process right in the visitation context. Instead, the plurality articulated the factors in that particular case that weighed against the constitutional application of the statutory requirement of the best interest of the child.[22]

---

[17] *Smith*, 137 Wn.2d at 20.

[18] *Troxel*, 530 U.S. 57.

[19] *Marks v. United States*, 430 U.S. 188, 193, 97 S. Ct. 990, 51 L. Ed. 2d 260 (1977) (explaining that in plurality decisions, court's holding is represented by the opinion whose reasoning provides the narrowest rationale supporting the court's judgment).

[20] *Troxel*, 530 U.S. at 73 (holding that "the constitutionality of any standard for awarding visitation turns on the specific manner in which that standard is applied").

[21] *Troxel*, 530 U.S. at 73.

[22] *Troxel*, 530 U.S. at 67-73.

First, the plurality was concerned by the statute's overbreadth.[23] The statute effectively allowed any third party seeking visitation to subject any decision by a parent concerning visitation of the parent's children to state court review.[24]

Second, the trial court failed to accord any special weight to the parent's determination of her own child's best interests.[25] The statute allowed a judge deciding a child's "best interest" to in effect, "overturn *any* decision by a fit custodial parent concerning visitation . . . ."[26] The plurality cautioned that this allowed a third party petitioning for visitation to subject a fit parent's decisions to state court scrutiny:

> Once the visitation petition has been filed in court and the matter is placed before a judge, a parent's decision that visitation would not be in the child's best interest is accorded no deference. Section 26.10.160(3) contains no requirement that a court accord the parent's decision any presumption of validity or any weight whatsoever. Instead, the Washington statute places the best-interest determination solely in the hands of the judge. Should the judge disagree with the parent's estimation of the child's best interests, the judge's view necessarily prevails. Thus, in practical effect, in the State of Washington a court can disregard and overturn *any* decision by a fit custodial parent concerning visitation whenever a third party affected by the decision files a visitation petition, based solely on the judge's determination of the child's best interests.[27]

According to the Court, "The decisional framework employed by the [Washington trial court] directly contravened the traditional presumption that a fit parent will act in the best interest of his or her child."[28] And because the trial

---

[23] *Troxel*, 530 U.S. at 67.

[24] *Troxel*, 530 U.S. at 67.

[25] *Troxel*, 530 U.S. at 69.

[26] *Troxel*, 530 U.S. at 67.

[27] *Troxel*, 530 U.S. at 67.

[28] *Troxel*, 530 U.S. at 69.

court did not find Granville to be an unfit parent, the trial court was required to presume that she acted in the best interest of her children.[29]

Third, the problem was not that the trial court intervened "but that when it did so, it gave no special weight at all to Granville's determination of her daughters' best interests."[30] Furthermore, the plurality was concerned that the trial court applied an opposite presumption by assuming that unless it could be shown to adversely affect the children, visitation with the grandparents was in the children's best interest.[31] Consequently, the Supreme Court concluded that a trial court must give at least some special weight to a fit parent's determination with regard to nonparental visitation.[32]

Finally, the Court noted there had been no allegation that visitation had been denied entirely. The dispute was not over whether the Troxels could have visitation, but over how much visitation they should receive.[33] The Court cautioned that "the Due Process Clause does not permit a State to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a 'better' decision could be made."[34] Because neither the Washington nonparental visitation statute nor the trial court in that case required anything more, the plurality of the Court held that the Washington statute, as applied in the case, was unconstitutional.[35]

The plurality concluded that the combination of these factors—the presumption given in favor of the grandparents rather than the parent, the failure to give significant

---

[29] *Troxel*, 530 U.S. at 68.

[30] *Troxel*, 530 U.S. at 69.

[31] *Troxel*, 530 U.S. at 69.

[32] *Troxel*, 530 U.S. at 70.

[33] *Troxel*, 530 U.S. at 71.

[34] *Troxel*, 530 U.S. at 72-73.

[35] *Troxel*, 530 U.S. at 73.

weight to the mother's offer of visitation, and the trial court's slender findings—demonstrated that the visitation order in this case was unconstitutional.[36]

But the Supreme Court explained that it was not considering the broad facial constitutional question as the Washington Supreme Court had done. Instead, the Court considered only the specific issues raised by Troxel:

> Because we rest our decision on the sweeping breadth of § 26.10.160(3) and the application of that broad, unlimited power in this case, we do not consider the primary constitutional question passed on by the Washington Supreme Court— whether the Due Process Clause requires all nonparental visitation statutes to include a showing of harm or potential harm to the child as a condition precedent to granting visitation. We do not, and need not, define today the precise scope of the parental due process right in the visitation context. In this respect, we agree with Justice Kennedy that the constitutionality of any standard for awarding visitation turns on the specific manner in which that standard is applied and that the constitutional protections in this area are best "elaborated with care." Because much state-court adjudication in this context occurs on a case-by-case basis, we would be hesitant to hold that specific nonparental visitation statutes violate the Due Process Clause as a *per se* matter.[37]

Thus, although the Supreme Court affirmed the Washington Supreme Court's decision, the Supreme Court's plurality decision narrowed the reasoning set forth by the Washington Supreme Court. The Supreme Court did not hold the Washington statute unconstitutional, as the Washington Supreme Court did, it merely held that it was unconstitutional as applied to *Granville*. The Supreme Court also did not decide whether the petitioning nonparent is required to make a showing that harm or potential harm will result if the child is not allowed visitation, as did the Washington Supreme Court.

---

[36] *Troxel*, 530 U.S. at 72.

[37] *Troxel*, 530 U.S. at 73 (citation omitted).

3. Applying the reasoning of *Troxel* and *Smith* to the current RCW 26.09.240

To determine if the current RCW 26.09.240 is constitutional, we must interpret its meaning. "We review questions of statutory construction de novo."[38] "The purpose of statutory interpretation is to determine and give effect to legislative intent. Legislative intent is primarily determined from the statutory language."[39]

When words in a statute are clear and unequivocal, we assume that the legislature meant exactly what it said and apply the statute as written. Although courts should not interpret statutory language " 'so as to result in absurd or strained consequences, neither should the court question the wisdom of a statute even though its results seem unduly harsh.' "[40]

Finally, statutes are presumed to be constitutional.[41] If a statute is susceptible to several different interpretations, the court will construe the statute so as to be constitutional.[42] Here, other than citations to *Smith* and *Troxel*, Christian provides no authority that the statute might be unconstitutional.

In *Smith*, the court rejected former RCW 26.09.240 because the statute "[did] not require the petitioner to establish that he or she has a substantial relationship with the child."[43] This requirement is satisfied by the current RCW 26.09.240. The statute requires that the petitioner "demonstrate by clear and convincing evidence that a

---

[38] *Smith*, 137 Wn.2d at 8 (citing *Our Lady of Lourdes Hosp. v. Franklin County*, 120 Wn.2d 439, 443, 842 P.2d 956 (1993)).

[39] *Smith*, 137 Wn.2d at 8 (citation omitted) (citing *Duke v. Boyd*, 133 Wn.2d 80, 87-88, 942 P.2d 351 (1997)).

[40] *Smith*, 137 Wn.2d at 8 (quoting *Duke*, 133 Wn.2d at 87).

[41] *State v. Heckel*, 143 Wn.2d 824, 832, 24 P.3d 404 (2001) (explaining that party challenging legislative act bears burden of proving it unconstitutional beyond a reasonable doubt).

[42] *Dep't of Natural Res. v. Littlejohn Logging, Inc.*, 60 Wn. App. 671, 677, 806 P.2d 779 (1991).

[43] *Smith*, 137 Wn.2d at 20-21.

significant relationship exists with the child with whom visitation is sought."[44] The statute also requires that there be a finding that visitation is in the best interest of the child.[45]

*Smith* also requires that in order to interfere with a parent's rights, the state must establish harm or potential harm.[46] By requiring a petitioner to establish a significant relationship, RCW 26.09.240(3) sets a threshold requirement. Only after establishing the presence of a significant relationship can a petitioning party then move to the next step, showing that visitation is in the child's best interest.

*Smith* also criticized RCW 26.10.160 because "any person" at "any time" could bring an action for visitation.[47] But under current RCW 26.09.240, a party may petition only when there is a modification of a parenting plan, or in the event of an action commenced under the domestic relations chapter.

*Smith* also cautioned that the statute gave no deference to a parent's decision that visitation was not in the best interest of the child.[48] Here, there is a presumption in favor of the parents, and there are specifically outlined criteria explaining "best interest."[49]

Next, short of preventing harm to the child, *Smith* explained that under the statutes, the best interest of the child was "insufficient to serve as a compelling state interest overruling a parent's fundamental rights."[50] Thus, according to *Smith*, there must be a presumption that the parent's decision denying visitation with the child is in the

---

[44] RCW 26.09.240(3).

[45] RCW 26.09.240(4). The statute lists a number of factors the court may consider when determining whether allowing visitation by a nonparent is in the best interests of the child. *See* RCW 26.09.240(6).

[46] *Smith*, 137 Wn.2d at 19-20.

[47] *Smith*, 137 Wn.2d at 20.

[48] *Smith*, 137 Wn.2d at 21.

[49] *See* RCW 26.09.240(6).

[50] *Smith*, 137 Wn.2d at 20.

best interest of the child. But the court also explained that this presumption could be overcome by showing that the parent was unfit, or that denying visitation would harm the child. The current RCW 26.09.240(7) satisfies this requirement by listing factors for the court to consider.

The current RCW 26.09.240 also satisfies the requirements found in *Troxel* by limiting who may seek visitation, and according special weight to a parent's determination of the child's best interest. And unlike *Troxel*, Herlinde alleged that she would not have visitation without a court order.

Finally, *Troxel* also required special factors which might justify the state's interference with a parent's fundamental right to make decisions.[51] We conclude that one such factor is a longstanding de facto parental relationship between the petitioner and the child.

Here, Herlinde functioned as the primary caregiver for five years and has a significant relationship with C.A. In fact, the trial court order dismissing her custody action found her relationship with C.A. to be beneficial and significant. Thus, the state has an interest in providing a continuing relationship between a child's primary caregiver and the child.

We hold that *Troxel* did not invalidate RCW 26.09.240, and that the statute is constitutional. But although the statute applies in this case, it is impossible for us to determine its specific application to the facts of this case. Accordingly, the appropriate remedy is to remand the case and allow the trial court to hear all facts relevant to visitation.

### 4. Other Issues on Appeal

Herlinde argues that the law of the case required the trial court to hear testimony on this issue in her visitation request.[52] Because we reverse the trial court on other grounds, we need not reach this issue.

---

[51] *Troxel*, 530 U.S. at 67-68.

[52] Br. of Appellant at 16.

Christian requests that we decline to review any errors arising out of the trial court's December 24, 2001 orders. He argues that because Herlinde did not appeal the December 24 order directly, she cannot challenge its finality, and by extension the final parenting plan the order contained. This would make our review of the final parenting plan reviewable only for an abuse of discretion.

But from the record, it appears that Herlinde did not receive notice of the December 24 proceeding. She was not aware of the proceeding and could not appeal any of the orders entered in that proceeding. Instead, she submitted a proposed order dismissing her motion so that she could appeal the final order. All parties signed this order. Due to her lack of notice, the proper order for her to appeal was the January 2002 order.

Because we grant Herlinde's request for a hearing on visitation, we must also direct the court to reopen the parenting plan's provisions concerning visitation.

Christian argues that RCW 26.09.240 is not properly before this court. Although Herlinde did not cite to the statute in her trial brief, it was the appropriate vehicle to obtain visitation rights. Christian contends that Herlinde's opening statement in her trial brief that "[t]his is a case about grandparent visitation at a time when there is no constitutionally sound grandparent visitation statute" in Washington amounts to invited error.

In its December 3 oral ruling, the trial court *implicitly* found that RCW 26.09.240 was invalid by concluding that there were no constitutional statutes concerning third party visitation in Washington after *Troxel* and *Smith*:

Smith is very clearly on point in this case; of course, as is Troxel. . . .

As such, there is no statutory scheme in the state of Washington, the United States Supreme Court having abolished, struck down the third-party visitation statute in the year of 2000, there is nothing left upon which to hang a claim as a third party for the right to visitation. The same goes for the

natural grandparents who live here . . . . That right under the facts of this case does not exist at law in the state of Washington.

RCW 26.09.240 is clearly a visitation statute. And neither *Troxel* nor *Smith* addresses the current RCW 26.09.240. In fact, the state Supreme Court clearly explained that at issue was former RCW 26.09.240, not the current version amended in 1996.[53] Because *Troxel* and *Smith* have made RCW 26.09.240's continued constitutionality unclear, we will review the issue.[54]

Christian requests attorney fees pursuant to RCW 26.09.140. However, RCW 26.09.240 contains its own provision for awarding attorney fees. Under this section, petitioners must pay fees if they fail to establish that a significant relationship exists with the child:

> If the petition or motion is dismissed for failure to establish the existence of a significant relationship, the petitioner or intervenor shall be ordered to pay reasonable attorney's fees and costs to the parent, parents, other custodian, or representative of the child who responds to this petition or motion.[55]

The statute presumes that there is a significant relationship between grandparents and grandchildren. And because Herlinde has also shown that there is a significant relationship between her and her grandchild, awarding attorney fees is inappropriate here. Accordingly, we decline to award attorney fees.

---

[53] *Smith*, 137 Wn.2d at 8 ("At issue in each of these cases is whether RCW 26.10.160(3) and former RCW 26.09.240 permit a nonparent to seek visitation in the absence of a custody proceeding.").

[54] RAP 1.2 provides in part as follows:

Cases and issues will not be determined on the basis of compliance or noncompliance with these rules except in compelling circumstances where justice demands, subject to the restrictions in rule 18.8(b).

. . . .

. . . The appellate court may waive or alter the provisions of any of these rules in order to serve the ends of justice, subject to the restrictions in rule 18.8(b) and (c).

[55] RCW 26.09.240(3).

We remand this matter to the trial court to determine whether Herlinde is entitled to visitation under RCW 26.09.240.

Reversed and remanded.

KENNEDY and ELLINGTON, JJ., concur.

Review granted at 152 Wn.2d 1002 (2004).