[No. 75262-1.   En Banc.]
Argued November 16, 2004.   Decided April 7, 2005.

*In the Matter of the Parentage of* C.A.M.A.

CHRISTIAN E. APPEL, *Petitioner*, v. HERLINDE APPEL, *Respondent.*

54

*Jordan Gross* (of *Yarmuth Wilsdon Calfo P.L.L.C.*), for petitioner.

*Charles K. Wiggins, Kenneth W. Masters,* and *Shelby R. Frost Lemmel* (of *Wiggins & Masters, P.L.L.C.*) and *Mark T. Patterson II* (of *Rockefeller Law Office, L.L.P.*), for respondent.

*Robert M. McKenna, Attorney General,* and *William B. Collins, Senior Assistant,* on behalf of the Attorney General's office, amicus curiae.

*Marc T. Christianson* and *J. Mark Weiss* on behalf of the Washington State Bar Association, amicus curiae.

¶1 SANDERS, J. — We return to grandparent visitation, addressed previously in both the United States Supreme Court, *Troxel v. Granville,* 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000), and in this court, *In re Custody of Smith,* 137 Wn.2d 1, 969 P.2d 21 (1998), *aff'd on narrower grounds by Troxel,* 530 U.S. 57. But here we examine a different grandparent visitation statute, RCW 26.09.240. Applying *Troxel* and *Smith* we hold this statute is unconstitutional, reverse the Court of Appeals, and reinstate the trial court's decision.

## FACTS AND PROCEDURAL HISTORY

¶2 "C" was born December 25, 1992, to Christine Sue Norton and Christian Appel (the parent), who were not married and whose relationship ended after C's first birthday.

¶3 A year and a half later the parent and C moved to Germany where they lived with the parent's parents, Herlinde and Joachim Appel.[1] The parent and C lived in Germany with the grandparents for two years, and during this time the grandparents cared for C while the parent was at work.

¶4 In 1997, the grandparents, the parent, and C visited the parent's older sister in California. The parent informed the grandparents that he and C would stay in the United States, but grandparents convinced him that C should return to Germany with them until the parent had established a stable home.

¶5 In 1999, the parent told the grandparents that he was engaged to be married and wanted C to live with him, his new wife, and her children in Snohomish County, Washington. In 2000 C attended her father's wedding and, while the grandparents were traveling after the wedding, the parent filed a parentage action in Snohomish County Superior Court. The Superior Court issued a temporary parenting plan which was agreed to by Norton (C's mother), and which included provisions for Norton to have visitation with C.

¶6 Upon the grandparents' return the parent informed them of the action and the custody documentation. The grandparent filed a motion to intervene. The grandparent moved to have the custody issue decided in Germany, but the Court of Appeals held the Snohomish County Superior Court had jurisdiction. Upon remand from this prior appeal, the grandparent petitioned for visitation.

¶7 The Superior Court held that C's parents were fit and that no constitutional third party visitation statute existed in Washington. The court granted the parent's motion to dismiss the petition.

---

[1] Only Herlinde Appel is a party to this litigation. We refer to her as the grandparent.

¶8 The Court of Appeals, Division One, reversed in a published decision.[2] The court found RCW 26.09.240 constitutional under *Troxel* and *Smith*. We accepted discretionary review.

## ANALYSIS

I.  RCW 26.09.240 unconstitutionally infringes on a fit parent's right to control visitation with his/her child under the *Smith* and *Troxel* cases

A. Standard of Review

■■ ¶9 The interpretation of a statute and the determination of whether a statute violates the United States Constitution are issues of law that are reviewed de novo.[3] What constitutional standard is to be applied in this case—whether to apply strict scrutiny or some lesser tier of review—is a matter of dispute among the parties. This is because the grandparent contends *Smith* is no longer good law. We disagree.

■■ ¶10 We held in *Smith* that "parents have a fundamental right to autonomy in child-rearing decisions," *Smith*, 137 Wn.2d at 13, and this "liberty" interest is protected as a matter of substantive due process under the Fourteenth Amendment. *Id.* at 15. We held state interference with this interest "is justified only if the state can show that it has a compelling interest and such interference is narrowly drawn to meet only the compelling state interest involved." *Id.* This is the "strict scrutiny" test. *AK-WA, Inc. v. Dear*, 66 Wn. App. 484, 492, 832 P.2d 877 (1992) (citing *Dunn v. Blumstein*, 405 U.S. 330, 92 S. Ct. 995, 31 L. Ed. 2d 274 (1972)).

¶11 Because the standard of review—strict scrutiny versus the "balancing" test employed in *Troxel*—turns on whether *Smith* is still good law, we address that issue first.

---

[2] *In re Parentage of C.A.M.A.*, 120 Wn. App. 199, 84 P.3d 1253 (2004).

[3] *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 807, 16 P.3d 583 (2001); *State v. Blilie*, 132 Wn.2d 484, 489, 939 P.2d 691 (1997).

The *Smith* opinion decided two consolidated cases. One of those cases (*Troxel*) was appealed to the United States Supreme Court, which affirmed the Washington State Supreme Court on narrower grounds.

¶12 The *Smith* case was *not* appealed to the United States Supreme Court. While the effect of the United States Supreme Court's *Troxel* opinion affirming *Smith* on narrower grounds is not clearly established by the parties, the fact that *Smith* still stands as the opinion by the highest court to hear the *In re Custody of Smith* case dictates that *Smith* remains good law unless inconsistent with *Troxel*. *Troxel* did not vacate *Smith*; *Troxel* did not reverse *Smith*; *Troxel* did not even narrow *Smith*'s holding. The United State Supreme Court explicitly declined to consider

> the primary constitutional question passed on by the Washington Supreme Court—whether the Due Process Clause requires all nonparental visitation statutes to include a showing of harm or potential harm to the child as a condition precedent to granting visitation. We do not, and need not, define today the precise scope of the parental due process right in the visitation context.

*Troxel*, 530 U.S. at 73.

¶13 We need not decide the precise effect of an affirmance on narrower grounds of our cases by the United States Supreme Court because *Smith* stands as independent, unappealed precedent. We conclude *Smith* remains binding precedent.[4]

¶14 The grandparent also contends *Troxel* requires challenges to grandparent visitation statutes be brought "as applied" rather than as "facial" challenges, thereby claiming the need for a fact finding hearing before evaluating the statute's constitutionality. But the parent's challenge in this case *stems from the language of the statute itself*. It does not depend on the application of facts particular to this case. The parent claims the statute can never be applied

---

[4] Yet even under the more lenient "balancing" test used by the United States Supreme Court in the *Troxel* decision, Washington's current third party visitation statute is unconstitutional.

under any circumstances without violating numerous minimal constitutional requirements set forth by both the Washington State Supreme Court and the United States Supreme Court. The challenge is therefore facial.

## B. RCW 26.09.240, *Smith*, and *Troxel*

¶15 This visitation statute provides:

(1) A person other than a parent may petition the court for visitation with a child at any time or may intervene in a pending dissolution, legal separation, or modification of parenting plan proceeding. A person other than a parent may not petition for visitation under this section unless the child's parent or parents have commenced an action under this chapter.

(2) A petition for visitation with a child by a person other than a parent must be filed in the county in which the child resides.

(3) A petition for visitation or a motion to intervene pursuant to this section shall be dismissed unless the petitioner or intervenor can demonstrate by clear and convincing evidence that a significant relationship exists with the child with whom visitation is sought. If the petition or motion is dismissed for failure to establish the existence of a significant relationship, the petitioner or intervenor shall be ordered to pay reasonable attorney's fees and costs to the parent, parents, other custodian, or representative of the child who responds to this petition or motion.

(4) The court may order visitation between the petitioner or intervenor and the child between whom a significant relationship exists upon a finding supported by the evidence that the visitation is in the child's best interests.

(5)(a) Visitation with a grandparent shall be presumed to be in the child's best interests when a significant relationship has been shown to exist. This presumption may be rebutted by a preponderance of evidence showing that visitation would endanger the child's physical, mental, or emotional health.

(b) If the court finds that reasonable visitation by a grandparent would be in the child's best interest except for hostilities that exist between the grandparent and one or both of the

parents or person with whom the child lives, the court may set the matter for mediation under RCW 26.09.015.

(6) The court may consider the following factors when making a determination of the child's best interests:

(a) The strength of the relationship between the child and the petitioner;

(b) The relationship between each of the child's parents or the person with whom the child is residing and the petitioner;

(c) The nature and reason for either parent's objection to granting the petitioner visitation;

(d) The effect that granting visitation will have on the relationship between the child and the child's parents or the person with whom the child is residing;

(e) The residential time sharing arrangements between the parents;

(f) The good faith of the petitioner;

(g) Any criminal history or history of physical, emotional, or sexual abuse or neglect by the petitioner; and

(h) Any other factor relevant to the child's best interest.

(7) The restrictions of RCW 26.09.191 that apply to parents shall be applied to a petitioner or intervenor who is not a parent. The nature and extent of visitation, subject to these restrictions, is in the discretion of the court.

(8) The court may order an investigation and report concerning the proposed visitation or may appoint a guardian ad litem as provided in RCW 26.09.220.

(9) Visitation granted pursuant to this section shall be incorporated into the parenting plan for the child.

(10) The court may modify or terminate visitation rights granted pursuant to this section in any subsequent modification action upon a showing that the visitation is no longer in the best interest of the child.

RCW 26.09.240.

¶16 The parent challenges this statute under both *Smith* and *Troxel*. In *Smith*, we held "parents have a fundamental right to autonomy in child-rearing decisions," *Smith*, 137 Wn.2d at 13, and this "liberty" interest is protected as a

matter of substantive due process under the Fourteenth Amendment. *Id.* at 15. We held state interference with this interest must be subjected to strict scrutiny and thus "is justified only if the state can show that it has a compelling interest and such interference is narrowly drawn to meet only the compelling state interest involved." *Id.* We recognized while "in certain circumstances where a child has enjoyed a substantial relationship with a third person, arbitrarily depriving the child of the relationship could cause severe psychological harm to the child," *id.* at 20, "[s]hort of preventing harm to the child, the standard of 'best interest of the child' is insufficient to serve as a compelling state interest overruling a parent's fundamental rights." *Id.*

¶17 Thus, *Smith* required that a grandparent (or other third party seeking visitation) must show that denial of visitation would result in harm to the child before a court could order visitation over the objections of a fit parent. "It is not within the province of the state to make significant decisions concerning the custody of children merely because it could make a 'better' decision [than the parent]."[5] *Id.* While the statute at issue here was not before the *Smith* court (though a precursor statute was), *Smith* did not limit application of constitutional requirements to the statutes challenged in that case.

¶18 *Troxel* was a plurality opinion. The parties agree the plurality opinion by Justice Sandra Day O'Connor is the narrowest ruling, representing the holding of the court. *See Marks v. United States*, 430 U.S. 188, 193, 97 S. Ct. 990, 51 L. Ed. 2d 260 (1977).

¶19 The *Troxel* plurality stated, "[t]he liberty interest in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the

[5] *Smith* also required that a court "take into consideration such factors as the parents' reasons for restricting visitation with the petitioner or any allegations of past physical or mental abuse by petitioner." *Smith*, 137 Wn.2d at 21. The former factor is encompassed by *Troxel*'s constitutionally mandated presumption (discussed below) and the latter factor "may" be considered by a court under subsection (6)(g) of the statute. RCW 26.09.240(6)(g).

fundamental liberty interests recognized by this Court." *Troxel*, 530 U.S. at 65. While the Court cited the breadth of the visitation statute at issue in that case, the central focus of *Troxel* was failure of the Washington statute to afford a presumption that parents act in the best interests of their child. The Court identified the flaw in the statute:

[The statute] contains no requirement that a court accord the parent's decision any presumption of validity or any weight whatsoever. Instead, the Washington statute places the best-interest determination solely in the hands of the judge. Should the judge disagree with the parent's estimation of the child's best interests, the judge's view necessarily prevails. Thus, in practical effect, in the State of Washington a court can disregard and overturn *any* decision by a fit custodial parent concerning visitation whenever a third party affected by the decision files a visitation petition, based solely on the judge's determination of the child's best interests.

*Id.* at 67.

¶20 The Court further focused on the statute a few paragraphs later:

Accordingly, so long as a parent adequately cares for his or her children (*i.e.*, is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children.

The problem here is not that the Washington Superior Court intervened, but that when it did so, it gave no special weight at all to Granville's determination of her daughters' best interests. More importantly, it appears that the Superior Court applied exactly the opposite presumption.

. . . .

In effect, the judge placed on . . . the fit custodial parent, the burden of *disproving* that visitation would be in the best interest of her daughters.

*Id.* at 68-69 (citations omitted).

¶21 The Court's holding emerges in the next paragraph:

> The decisional framework employed by the Superior Court directly contravened the traditional presumption that a fit parent will act in the best interest of his or her child. In that respect, the court's presumption failed to provide any protection for Granville's fundamental constitutional right to make decisions concerning the rearing of her own daughters. . . . And, if a fit parent's decision of the kind at issue here becomes subject to judicial review, *the court must accord at least some special weight to the parent's own determination.*

*Id.* at 69-70 (emphasis added) (citations omitted).

¶22 Returning to the text of the current statute, it is clear that subsection (5)(a) directly contravenes the constitutionally required presumption that the fit parent acts in the child's best interests. Subsection (5)(a) states that "[v]isitation with a grandparent shall be presumed to be in the child's best interests," and provides that this presumption may be rebutted by the fit parent (who would presumably be opposing the visitation request) "by a preponderance of evidence showing that visitation would endanger the child's physical, mental, or emotional health." The United States Supreme Court held that a court must accord "special weight" to the parent's own determination, and because subsection (5)(a) establishes a presumption antonymous to that constitutionally required "special weight," the subsection must fail.[6]

¶23 While the "nature and reason for either parent's objection to granting the petitioner visitation" is a factor that the court *may* consider under RCW 26.09.240(6)(c), under *Troxel* the mere *permissive* consideration of such an objection is not enough. "Special weight" must be accorded

---

[6] A North Dakota statute containing a similar presumption in favor of grandparent visitation and placing a similar burden on parents to overcome that presumption was found unconstitutional in the pre-*Troxel* case *Hoff v. Berg,* 1999 ND 115, 595 N.W.2d 285, 290. *Hoff* was cited by the *Troxel* plurality. *Troxel,* 530 U.S. at 70. The Alabama Court of Civil Appeals held a statute containing a rebuttable presumption in favor of grandparent visitation unconstitutional under *Troxel* in *R.S.C. v. J.B.C.,* 812 So. 2d 361 (Ala. Civ. App. 2001).

the fit parent's determination of what is in the child's best interests.

¶24 Under *Smith*'s broader holding, the statute suffers from a number of other constitutional defects. The standard in subsection (4) used to determine whether to grant visitation—the "best interests of the child" standard—was expressly rejected in *Smith*. *Smith*'s central holding required a showing of harm to the child to overcome the presumption that a fit parent acts in the child's best interests: "Short of preventing harm to the child, the standard of 'best interest of the child' is insufficient to serve as a compelling state interest overruling a parent's fundamental rights." *Smith*, 137 Wn.2d at 20.

¶25 The grandparent contends that the statutory requirement that a visitation petitioner establish a "substantial relationship" with the child preserves the statute's constitutionality under *Smith*. Here the Court of Appeals held the "significant relationship" requirement, together with the list of factors that the trial court *may* consider, rendered the statute constitutional under *Troxel* and *Smith*. *In re Parentage of C.A.M.A.*, 120 Wn. App. 199, 213-14, 84 P.3d 1253 (2004). But in *Smith* we noted the failure of the statute to require a "substantial relationship" between a third party and a child in order for a visitation petition to even be heard by a court, *id.* at 21, and we discussed that requirement (1) as a threshold test, and (2) as *part of the required showing of harm* to the child in order to overcome the presumption that the parent acts in the child's best interests. We held that establishing a "substantial relationship" is a necessary, though not sufficient, component of a visitation statute that comports with due process.

¶26 The Court of Appeals also reversed the "special factors" test from *Troxel*. *Troxel* clearly treated the existence of "special factors that might justify the State's interference with [a parent's] fundamental right to make decisions concerning the rearing of her two daughters" as necessary, but not sufficient, to allow a court to order visita-

tion over a fit parent's objections. *Troxel*, 530 U.S. at 68. A court may establish such "special factors" but must also evaluate those factors in light of the "special weight" the court accords to the fit parent's wishes. *Id*. at 68-69.

¶27 The Court of Appeals held as a matter of law that "one such [special] factor is a longstanding [significant] relationship between the petitioner and the child."[7] *In re C.A.M.A.*, 120 Wn. App. at 214. While this may be, the existence of such a "special factor" does not bear on the constitutionality of the statute, but on whether, under a constitutional statute, a grandparent could overcome the presumption that a fit parent acts in a child's best interest.

¶28 The grandparent also cites several cases from other states to buttress her claims that RCW 26.09.240 is constitutional. However, the statutes considered in those out-of-state cases did not contain the constitutionally flawed presumption in favor of grandparent visitation present in Washington's statute, and those courts had not previously held that a showing of harm to the child is required to overcome the presumption that a fit parent acts in the best interest of the child, as the Washington State Supreme Court held in *Smith*.[8]

---

[7] Without defining it, the Court of Appeals used the term "de facto parental" relationship. However, under the terms of the statute, the grandparent's longstanding relationship was one form of the "significant relationship" required by the statute. The Court of Appeals appeared to conclude that a "de facto parental" relationship was established by the briefing. It did not cite to the record, and the trial court did not enter any such finding. The parent did not dispute that the grandparent had a substantial or significant relationship with C, although the parent did dispute whether the grandparent was a "de facto" parent of C. Suppl. Br. of Pet'r at 14.

[8] The grandparent cited four cases. *Williams v. Williams*, 2002-NMCA-074, 132 N.M. 445, 50 P.3d 194, concerned a New Mexico statute that utilized a multifactor balancing test to determine grandparent visitation. However, that test did not include a presumption in favor of grandparent visitation, but the New Mexico courts had previously identified as a factor " 'the wishes and opinion of the parents.' " *Williams*, 50 P.3d at 197 (quoting *Lucero v. Hart*, 120 N.M. 794, 800, 907 P.2d 198 (Ct. App. 1995)). The New Mexico Court of Appeals held that the trial court had given "appropriate weight to the wishes of Parents" under *Troxel*. *Id*. at 200.

In *DeGraeve v. Holm*, 30 Kan. App. 2d 865, 50 P.3d 509 (2002), the Kansas statute at issue did not provide a presumption in favor of grandparent visitation. 50 P.3d at 512. The court stated that the burden of overcoming the presumption that a fit parent acts in the best interest of the child was on the grandparent. *Id*.

¶29 We conclude RCW 26.09.240's presumption in favor of grandparent visitation is unconstitutional under *Troxel* and the application of the "best interests of the child" standard, rather than a "harm to the child" standard, is unconstitutional under *Smith*.

II. The unconstitutional portions of RCW 26.09.240, combined with the constitutionally required presumptions which are not contained in the text, render the entire statute unconstitutional

■■■ ¶30 The test for whether unconstitutional statutory provisions can be severed from constitutional provisions is:

---

Further, *DeGraeve* directly contradicts *Smith* as it explicitly endorsed the "best interests" test as the measure of when visitation can be granted.

The Arizona case of *Jackson v. Tangreen*, 199 Ariz. 306, 18 P.3d 100 (Ct. App. 2000) also concerned a grandparent visitation statute which required balancing numerous factors, but which did not include a presumption in favor of visitation. The court suggested that the specific factors present in that statute " 'show[ ] that the legislature was conscious of parents' superior right to the custody and care of their children.' " 18 P.3d at 104 (quoting *Graville v. Dodge*, 195 Ariz. 119, 127, 985 P.2d 604 (Ct. App. 1999) (alteration in original)). However, the court's discussion of how the "procedural factors" in the statute enforced the constitutionally mandated presumption that parents act in the best interest of their children was bereft of analysis. A later Arizona case, not cited by the grandparent, provides clarification. In *McGovern v. McGovern*, 201 Ariz. 172, 33 P.3d 506 (Ct. App. 2001), the Arizona Court of Appeals specifically held that Arizona courts "should recognize and apply a presumption that a fit parent acts in his or her child's best interest in decisions concerning the child's care, custody, and control, including decisions concerning grandparent visitation." *McGovern*, 33 P.3d at 511. The Arizona courts also apply the "best interest of the child" standard in visitation cases. *Id.*

Finally, the grandparent cites *Rideout v. Riendeau*, 2000 ME 198, 761 A.2d 291. The Rideout court held that the state has "a *compelling* interest in providing a forum within which grandparents who have acted as parents to their grandchild may seek continued contact with that child." *Rideout*, 761 A.2d at 294 (emphasis added). No other court cited by the parties has held that such an interest is "compelling" under the Fourteenth Amendment, and the Washington State Supreme Court in *Smith* implicitly rejected that interest as compelling, or at least as compelling enough, without a showing of harm to the child, to overcome a fit parent's *fundamental* right to control visitation. In fact, the *Rideout* case actually tracks the *Smith* analysis, since the Maine Supreme Court required a greater showing than the "best interest of the child" in order to overcome the presumption in favor of fit parents. *Id.* at 301. And while *Rideout* may be persuasive precedent for the argument that termination of a longstanding parent-like relationship between a grandparent and a child actually causes harm to that child sufficient that the state may intervene (a point explicitly recognized in *Smith*), the case has little bearing on the constitutionality of Washington's statute. The Maine statute at issue did not provide a presumption in favor of grandparent visitation.

Ordinarily, only the part of an enactment that is constitutionally infirm will be invalidated, leaving the rest intact. An unconstitutional provision may not be severed, however, if its connection to the remaining, constitutionally sound provision is so strong "that it could not be believed that the legislature would have passed one without the other; or where the part eliminated is so intimately connected with the balance of the act as to make it useless to accomplish the purposes of the legislature." Also, the court is obliged to strike down the entire act if the result of striking only the proviso is to give the remainder of the statute a much broader scope.

*Guard v. Jackson*, 83 Wn. App. 325, 333, 921 P.2d 544 (1996) (footnotes omitted) (quoting *Leonard v. City of Spokane*, 127 Wn.2d 194, 201, 897 P.2d 358 (1995)), *aff'd*, 132 Wn.2d 660, 940 P.2d 642 (1997).

¶31 Further, unless we conclude the legislature would have passed the statute absent the unconstitutional provisions, the proper remedy is complete statutory invalidation rather than changing legislative intent by upsetting the legislative compromise. *Griffin v. Eller*, 130 Wn.2d 58, 69-70, 922 P.2d 788 (1996).

¶32 There does not appear to be a severability clause applicable to subsection (5)(a) (the grandparent presumption) or to the "best interests of the child" standard used throughout the statute. Subsection (5)(a) was added in 1996, and the two severability clauses in chapter 26.09 RCW by their terms apply only to the 1987 and 1989 acts that amended the statute. RCW 26.09.913 (LAWS OF 1987, ch. 460); RCW 26.09.914 (LAWS OF 1989, ch. 375). The "best interest of the child" standard was in the original statute enacted as Laws of 1973, Ex. Sess., ch. 157 § 24. This bill did not contain a severability clause, nor did the 1996 amendments that substantially rewrote the section but retained the "best interest of the child" standard. *See* LAWS OF 1996, ch. 177, § 1(10). The presence of an applicable

severability clause is evidence that the legislature would have enacted the constitutional portions of a statute without the unconstitutional portions, *State v. Anderson*, 81 Wn.2d 234, 236, 501 P.2d 184 (1972), but a severability clause is not necessary in order to meet the severability test. *See, e.g., Guard*, 83 Wn. App. 325.

¶33 Under *Troxel* the grandparent's presumption in subsection (5)(a) must be struck and this court would have to imply the constitutionally required *Troxel* presumption giving special weight to a fit parent's decisions concerning visitation. Instead of the permissive consideration of the "nature and reason"[9] for a fit parent's objection to visitation in subsection (6), we would have to imply both mandatory consideration and that the parent's wishes be given special weight.

¶34 *Smith* requires more. Since harm to the child from lack of visitation must be demonstrated to order visitation, the "best interests" standard contained in subsection (4) would be invalid and the court would have to imply a "harm to the child" standard in its place. The same "harm to the child" standard would have to be substituted in subsection (5)(b), which provides for mediation if "reasonable visitation by a grandparent would be in the child's best interest except for hostilities that exist between the grandparent and one or both of the parents." RCW 26.09.240(5)(b).[10] This would be an extensive rewrite of the statute.

¶35 We conclude that the legislature would not have passed the statute without both the grandparent presumption and the best-interests-of-the-child standard. We cannot know how the legislative compromise regarding the presumptions and standards applied to visitation decisions affected the legislature's choices regarding the factors set forth in subsection (6). With different presumptions and a different standard, the legislature may well have chosen different factors for consideration in making visitation

---

[9] RCW 26.09.240(6)(c).

[10] This court would have to "rewrite" the subsection to read "if the court finds that lack of reasonable visitation by a grandparent would harm the child, and that such visitation would be granted except for hostilities . . . ."

decisions, and such a drastic rewrite of the statute by the court would "upset[ ] the legislative compromise." *Griffin*, 130 Wn.2d at 69.

¶36 "Courts do not amend statutes by judicial construction, nor rewrite statutes 'to avoid difficulties in construing and applying them.'" *Millay v. Cam*, 135 Wn.2d 193, 203, 955 P.2d 791 (1998) (citation omitted) (quoting *Applied Indus. Materials Corp. v. Melton*, 74 Wn. App. 73, 79, 872 P.2d 87 (1994)). "[T]here is a difference between adopting a saving construction and rewriting legislation altogether." LAURENCE H. TRIBE, *AMERICAN CONSTITUTIONAL LAW* § 12-30, at 1032 (2d ed. 1988). We show greater respect for the legislature by preserving the legislature's fundamental role to rewrite the statute rather than undertaking that legislative task ourselves. Therefore we hold the statute unconstitutional in its entirety.

III. Attorney Fees

¶37 The parent requested attorney fees before the Court of Appeals under RCW 26.09.140:

> The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for reasonable attorney's fees or other professional fees in connection therewith, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or enforcement or modification proceedings after entry of judgment.
>
> Upon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorney's fees in addition to statutory costs.

¶38 The Court of Appeals appears to have implicitly held that this statute did not apply. The court held that RCW 26.09.140 was not available because there is an attorney fees clause in RCW 26.09.240(3). *In re C.A.M.A.*, 120 Wn. App. at 216.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

¶39 This argument is untenable. The attorney fees clause in RCW 26.09.240(3) is tied to the "significant relationship" threshold test and requires that attorney fees be paid by those who petition for visitation and cannot meet the threshold test of proving, by clear and convincing evidence, a significant relationship to the child. This is clearly intended as a disincentive to filing by a petitioner with a remote relationship or to filing frivolous or nuisance petitions.

▮▮▮▮ ¶40 But RCW 26.09.240(3) says nothing about limiting the application of RCW 26.09.140. That statute provides for attorney fees based on the financial resources of each party "maintaining or defending any proceeding under this chapter." RCW 26.09.140. The grandparent's intervention and petition for visitation is clearly a "proceeding under this chapter." The parent filed an affidavit of financial need as required by RAP 18.1 with the Court of Appeals. Under RAP 18.1(i) we remand for the trial court to weigh the financial resource of the parties and award fees to the parent under RCW 26.09.140 if appropriate.

## CONCLUSION

¶41 The Court of Appeals is reversed. RCW 26.09.240 is unconstitutional and invalid. The case is remanded to the trial court to weigh the financial resource of the parties and determine if it will award fees to the parent under RCW 26.09.140.

ALEXANDER, C.J.; C. JOHNSON, MADSEN, BRIDGE, CHAMBERS, OWENS, and FAIRHURST, JJ.; and IRELAND, J. Pro Tem., concur.