**FILE**
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE JUL 0 7 2016

CHIEF JUSTICE



This opinion was filed for record
at 8:00 am on July 7, 2016

Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |
|---|---|
| In the Matter of the Custody of | ) |
| | ) |
| M.W., | ) No. 90072-8 |
| | ) |
| Child. | ) En Banc |
| | ) |
| GREGORY SCOTT MINIUM and | ) |
| LINDA MINIUM, | ) |
| | ) Filed  JUL 0 7 2016 |
| Petitioners, | ) |
| | ) |
| and | ) |
| | ) |
| PATTI SHMILENKO,[†] | ) |
| | ) |
| Respondent, | ) |
| | ) |
| JOHN SHMILENKO, | ) |
| | ) |
| Respondent. | ) |
| | ) |

YU, J.—The question in this case is whether a third party—here, a step-grandfather with no legally established relationship to his step-grandson—can

---

[†] Mrs. Shmilenko is not a party on review.

petition for visitation rights through a custody proceeding pursuant to chapter 26.10 RCW or under some equitable doctrine. Stated simply, does a right to third-party visitation exist under Washington law? We hold that it does not.

Washington's third-party visitation statutes were invalidated as facially unconstitutional because they infringed on a parent's fundamental liberty interests. Unless and until the legislature amends chapter 26.10 RCW, there is no statutory basis for third-party visitation. Furthermore, we decline to recognize a right to petition for third-party visitation in equity. We therefore reverse and remand for dismissal and consideration of the award of attorney fees.

FACTUAL AND PROCEDURAL HISTORY

M.W.'s parents died in a tragic car accident on August 9, 2008, just days before his first birthday. At that time, M.W. was in the physical custody of petitioners Greg and Linda Minium, M.W.'s maternal grandparents. Approximately one month after the accident, the Miniums filed a petition in Cowlitz County Superior Court for nonparental custody of M.W. pursuant to RCW 26.10.030(1). Clerk's Papers (CP) at 3-7. The petition named Patti Shmilenko, M.W.'s paternal grandmother, as the sole respondent. *Id.* at 3. John

Shmilenko, Mrs. Shmilenko's husband and M.W.'s step-grandfather, was not named as a party.[1] Mr. Shmilenko did not attempt to intervene.

In March 2010, the Miniums and Mrs. Shmilenko agreed to the entry of a nonparental custody decree establishing the Miniums as M.W.'s legal custodians and granting visitation rights to Mrs. Shmilenko according to an agreed residential schedule. *Id.* at 15-20, 21-31. The findings of fact and conclusions of law, custody decree, and residential schedule were all entered as agreed orders, with no independent fact-finding by the trial court. *Id.* at 8-12, 15-18, 21-29. The residential schedule specified that the parties would review the visitation schedule when M.W. entered school. *Id.* at 22. The record is silent as to why Mr. Shmilenko was not included in the court's orders despite residing in the same household as his wife, but all of the orders explicitly provide for visitation with "Patti Shmilenko." *E.g., id.* at 11, 16, 22-24. Mr. Shmilenko has maintained a relationship with M.W. through his wife's visitation rights.

When M.W. reached school age three years later, the parties could not agree on a modified residential schedule. Mrs. Shmilenko subsequently petitioned the superior court to modify the original custody decree and residential schedule, naming both herself and her husband as "requesting parties." *Id.* at 35

---

[1] M.W.'s biological paternal grandfather, Richard Miller, also was not named in the petition. M.W. has an ongoing relationship with Mr. Miller pursuant to an informal agreement with the Miniums, Pet'rs' Opening Br. at 4, which is not at issue in this case.

(capitalization omitted). Mrs. Shmilenko also moved for a temporary amended residential schedule. *Id.* at 49-52. In response, the Miniums asked the court to terminate Mrs. Shmilenko's visitation rights, contending that her court-ordered, third-party visitation was unconstitutional and that she also was not entitled to visitation under the equitable doctrine of de facto parentage. *Id.* at 54-59. In the alternative, the Miniums asked the court to order the parties to participate in mediation. *Id.* at 59.

The court entered a temporary order on October 7, 2013, amending M.W.'s residential schedule and allowing Mrs. Shmilenko to continue to exercise her own visitation rights pursuant to the parties' prior agreed order. *Id.* at 62-64. In the temporary order, the court did not rule on the Miniums' argument that third-party visitation is unconstitutional; it also crossed out a reference to Mr. Shmilenko as a "requesting party" and provided for visitation with Mrs. Shmilenko only. *Id.* at 63. Ultimately, the court entered a final order ensuring that Mrs. Shmilenko would continue to have midweek visits with M.W. during the school year, as well as other visitation during certain weekends, holidays, and vacations. *Id.* at 250-51. The Miniums do not challenge the court's orders as to Mrs. Shmilenko's visitation rights. Pet'rs' Opening Br. at 6 n.2.

At the same time that Mrs. Shmilenko petitioned to modify the original custody decree, she also filed a motion pursuant to CR 21 to join her husband as an

4

additional party to the underlying nonparental custody proceeding. CP at 44-46. The court denied that motion on October 28, 2013, but indicated that Mr. Shmilenko would be permitted to state the factual basis for bringing his own third-party custody or de facto parentage action and, if he did bring such an action, it would be consolidated with Mrs. Shmilenko's petition to modify the custody decree. *Id.* at 66. The court also specifically interlineated a provision that Mr. Shmilenko's "action would have to stand on its own merits." *Id.*

A few weeks later, on November 14, 2013, Mr. Shmilenko proceeded to file his own nonparental "custody" petition under a new cause number and requested that his petition be consolidated with the existing nonparental custody proceeding. *Id.* at 156-61. In his petition, Mr. Shmilenko did not request custody or decision-making authority with respect to M.W. Rather, he requested that the previously entered residential schedule be modified to explicitly give him visitation rights with M.W., stating that he had "maintained a grandparent-grandchild relationship with [M.W.]," and asserting that it was "in [M.W.]'s best interest that JOHN SHMILENKO have established visitation that will continue even in the event PATTI SHMILENKO no longer is able to exercise visitation." *Id.* at 159-60. There is no indication in Mr. Shmilenko's petition that his wife's visitation rights were in jeopardy. The Miniums opposed the requested relief and argued that the

5

petition should "be dismissed due to lack of adequate cause and as unconstitutional pursuant to RCW 26.10.160(3) and supporting case law." *Id.* at 166.

The court heard oral argument regarding Mr. Shmilenko's petition on January 13, 2014, and concluded that there was no legal basis under chapter 26.10 RCW for the proceeding. Verbatim Report of Proceedings (VRP) (Jan. 13, 2014) at 14. Rather than dismiss the action at that point, the court allowed the matter to proceed under a de facto parentage framework and directed Mr. Shmilenko to file an amended petition. *Id.* at 15, 18. The court entered a written order and scheduled another hearing for February 24, 2014. CP at 108.

At the February 24 hearing, the parties and the court all acknowledged the difficulty of trying to fit the facts of the present case into existing statutes or common law doctrine. In his arguments to the court regarding adequate cause, Mr. Shmilenko admitted that the de facto parent analysis was a "rough fit for this case," but nevertheless asserted that his amended petition reserved the right to seek visitation pursuant to the court's general equitable powers, even if he did not meet the specific requirements to establish de facto parentage. VRP (Feb. 24, 2014) at 5. Meanwhile, the Miniums contended that it would be impossible for Mr. Shmilenko to establish de facto parentage because "John and Patti Shmilenko have always referred to themselves, both of them, in their relationship with [M.W.], as grandparent in nature." *Id.* at 13. The court ultimately ruled that in

light of the preexisting custody decree, a finding of adequate cause was necessary and proceeded to analyze the request for visitation under the four elements needed to establish de facto parentage.[2] *See id.* at 27-28. The court ruled that the threshold requirement for a de facto parent claim—that the natural or legal parent consented to and fostered a parent-like relationship between the child and the moving party—did not apply because M.W.'s biological parents were deceased and "nobody here amounts to a natural or legal parent." *Id.* at 27.

The court then found that allegations made in Mr. Shmilenko's petition were sufficient to establish adequate cause on the remaining three elements. *Id.* at 28. Specifically, the court ruled that because M.W. had overnight visits with the Shmilenkos, Mr. Shmilenko had sufficiently established that "[t]he child and the moving party live together in the same household." *Id.* at 27. The court further found that even though the Miniums were M.W.'s primary caregivers, Mr. Shmilenko sufficiently alleged that he was "still assuming aspects of parenthood" and, therefore, established adequate cause for the requirement that "[t]he moving party assumed obligations of parenthood without expectation of financial compensation." *Id.* Finally, the court found that there was sufficient evidence to establish adequate cause to believe that Mr. Shmilenko "has been in a

---

[2] The four-part test for de facto parentage was established in *In re Parentage of L.B.*, 155 Wn.2d 679, 708, 122 P.3d 161 (2005), and is discussed further below.

parental role for a length of time sufficient to establish with the child a bonded, dependent relationship parental in nature." *Id.* at 28. The court cautioned that it was ruling on adequate cause only, which would allow the de facto parentage action to move forward, but the factual allegations were "obviously still to be tested." *Id.* Acknowledging that it was "swimming well away from any established channel markers, legally," the court stated it would certify the issue for immediate interlocutory appeal. *Id.*

On March 10, 2014, the court entered a written order formalizing its adequate cause ruling:

> 2.4 DE FACTO PARENT STATUS
> There is adequate cause to proceed with the De Facto Parent [claim] based on the following findings:
> a. [M.W.] has no living parents that are able to consent to and foster a parent-like relationship as provided in Section 2.5;
> b. Respondent JOHN SHMILENKO and the child have lived together in the same household during all visitations as provided in Section 2.5.
> c. Respondent JOHN SHMILENKO has assumed the obligations of parenthood without expectation of financial compensation as provided in Section 2.5.
> d. Respondent JOHN SHMILENKO has fully and completely undertaken a permanent, unequivocal, committed and responsible parental role in the child's life as provided in Section 2.5.
> 2.5 ADEQUATE CAUSE FINDING.
> a. The Court finds that there is not adequate cause for Respondent JOHN SHMILENKO to move forward with a nonparental custody petition under RCW 26.10.
> b. The Court finds that Respondent JOHN SHMILENKO has established adequate cause to proceed under the equitable remedies of the court as a de facto parent and grants leave to

allow the Respondent JOHN SHMILENKO to amend his nonparental custody petition to include a request for custody/visitation under the court's equitable powers.

CP at 144-45. The court certified its ruling for immediate review under RAP 2.3(b)(4). *Id.* at 147. The Miniums sought discretionary review by this court, *id.* at 148, and the commissioner granted direct review pursuant to RAP 4.2(a)(3) and (4).[3]

The Miniums challenge Mr. Shmilenko's claim for visitation rights, asserting that there is no statutory basis for his petition because the third-party visitation statutes were held facially unconstitutional. Mr. Shmilenko contends that provisions in the statute governing nonparental custody proceedings, specifically RCW 26.10.030 and .040, provide an independent statutory basis for third-party visitation that does not come within the sweep of this court's precedent. In the alternative, Mr. Shmilenko asserts that if there is no statutory basis for third-party visitation, he may request relief under the court's equitable powers.

## ANALYSIS

This court has repeatedly held that absent a valid statute, there is no right to third-party visitation under our existing laws. We invalidated Title 26 RCW's

---

[3] The Miniums assert that by failing to appeal the dismissal of his nonparental custody petition, Mr. Shmilenko waived his right to bring a statutory claim. Pet'rs' Reply Br. at 2. However, the commissioner explicitly raised the statutory issue upon granting discretionary review, and the Miniums did not move to modify this ruling. Thus, the statutory issue is properly before us.

third-party visitation provisions, RCW 26.10.160(3) and RCW 26.09.240, as facially unconstitutional in *In re Custody of Smith*, 137 Wn.2d 1, 969 P.2d 21 (1998), *aff'd on other grounds sub nom. Troxel v. Granville*, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000), and *In re Parentage of C.A.M.A.*, 154 Wn.2d 52, 109 P.3d 405 (2005). We determined that the sweeping scope of the third-party visitation provisions, which enabled any party to petition for third-party visitation rights at any time, "impermissibly interfere[d] with a parent's fundamental interest in the 'care, custody, and companionship of the child.'" *Smith*, 137 Wn.2d at 21 (quoting *In re Welfare of Sumey*, 94 Wn.2d 757, 762, 621 P.2d 108 (1980)). We reaffirmed this holding in *In re Parentage of L.B.*:

> [O]ur recent decision in *In re Parentage of C.A.M.A*[.] makes clear that Washington's current third party visitation statutes are unconstitutional and inoperative and thus unavailable as an alternative ground on which to seek visitation.
>
> . . . .
> . . . [F]ollowing this court's holding in *C.A.M.A.*, it is clear that Washington's third party visitation statutes, RCW 26.09.240 and RCW 26.10.160(3), are facially unconstitutional. The effect of holding a statute facially unconstitutional "is to render the statute totally inoperative." *City of Redmond v. Moore*, 151 Wn.2d 664, 669, 91 P.3d 875 (2004). As such, based on our holdings in *Smith* and *C.A.M.A.*, *until the legislature amends the relevant statutes, there exists no statutory right to third party visitation in Washington.*

155 Wn.2d 679, 713-15, 122 P.3d 161 (2005) (emphasis added).

In the intervening time since *L.B.*, the legislature has abstained from amending the third-party visitation statutes to cure the constitutional defects.

Despite our unwavering pronouncements and the legislature's refusal to amend the statute, we are now asked to determine whether a statutory right to third-party visitation may exist elsewhere in chapter 26.10 RCW. In the alternative, we are asked to use our equitable powers to create a third-party visitation right in the absence of a statutory remedy.

We take this opportunity to reaffirm our previous holdings that there is no statutory basis for third-party visitation under our laws. Furthermore, we defer to the legislature's abstention from reinstating a statutory basis for third-party visitation, and we do not find a compelling reason now to create such a right under our equitable powers.

## A. STATUTORY CLAIM

Recognizing that Washington's third-party visitation statutes have been invalidated, Mr. Shmilenko asserts that RCW 26.10.030 and .040 still provide a statutory basis for him to seek court-ordered visitation with M.W.

RCW 26.10.030 sets forth the procedure for commencing a child custody proceeding:

> (1) . . . [A] child custody proceeding is commenced in the superior court by a person other than a parent, by filing a petition seeking custody of the child in the county where the child is permanently resident or where the child is found, but only if the child is not in the physical custody of one of its parents or if the petitioner alleges that neither parent is a suitable custodian. . . .
> (2) Notice of a child custody proceeding shall be given to the child's parent, guardian and custodian, who may appear and be heard

11

and may file a responsive pleading. The court may, upon a showing of good cause, permit the intervention of other interested parties.

> (3) The petitioner shall include in the petition the names of any adult members of the petitioner's household.

RCW 26.10.040 states in relevant part:

> (1) In entering an order under this chapter, the court shall consider, approve, or make provision for:
> (a) Child custody, visitation, and the support of any child entitled to support.

Mr. Shmilenko argues that "RCW 26.10.030, as supplemented by RCW 26.10.040(1)(a), allows a trial court to award third party visitation where, as here, the child is in the custody of a non-natural parent."[4] Br. of Resp't at 13. Not only does this interpretation seek to revive a right that we have determined no longer exists under our laws, it is contrary to the purpose and intent of the statute and inconsistent with the plain and unambiguous language of the provisions.

### 1. *The plain language of chapter 26.10 RCW does not provide a statutory basis for third-party visitation*

Mr. Shmilenko contends that together, RCW 26.10.030 and .040 provide an independent right to petition for third-party visitation. However, his analysis looks only at the two provisions in relation to one another, rather than considering both provisions within the context of chapter 26.10 RCW as a whole—as the canons of

---

[4] The fact that an individual is pursuing court-ordered, third-party visitation over the objection of the child's legal custodians, rather than the child's deceased parents, cannot be the basis for reinstating a cause of action that we have previously held *facially* unconstitutional.

statutory interpretation demand. *See Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 10, 43 P.3d 4 (2002) (plain meaning can be determined by examining "the statute in which the provision at issue is found, as well as related statutes or other provisions of the same act in which the provision is found").

By its own terms, chapter 26.10 RCW as a whole is concerned, first and foremost, with *custody* determinations. RCW 26.10.010 states that "[i]t is the intent of the legislature to reenact and continue the law relating to third-party actions involving *custody* of minor children." (Emphasis added.) This clear and explicit statement of intent should guide analysis of the statute as a whole. *See Oliver v. Harborview Med. Ctr.*, 94 Wn.2d 559, 565, 618 P.2d 76 (1980) (legislative declarations of policy "'serve as an important guide in determining the intended effect of the operative sections'" (quoting *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 128, 580 P.2d 246 (1978))).

In the context of this clear legislative intent, Mr. Shmilenko's interpretation of RCW 26.10.030 and .040 is contrary to the plain language of the statute. RCW 26.10.030 governs the commencement of nonparental custody proceedings and makes no mention of visitation for a third party. Conceding that RCW 26.10.030 refers only to custody, Mr. Shmilenko argues that RCW 26.10.040 "mandates" a broader definition of custody that includes "visitation by noncustodial third parties." Br. of Resp't at 10. However, RCW 26.10.040 plainly

13

considers visitation only within the context of custody proceedings. The provision states that "the court *shall* consider, approve, or make provisions for: (a) [c]hild custody, visitation, *and* the support of any child entitled to support," RCW 26.10.040(1)(a) (emphasis added), enumerating visitation as one of the rights and responsibilities that a court is required to address when making a child custody determination. The mere mention of visitation in RCW 26.10.040 does not create an independent right to third-party visitation, and such an interpretation ignores the statute's plain language. Use of the conjunctive "and" requires that visitation be determined *alongside* custody. *See Tesoro Ref. & Mktg. Co. v. Dep't of Revenue*, 164 Wn.2d 310, 190, 189 P.3d 28 (2008). In other words, RCW 26.10.040 dictates what a court *must* consider when making a custody determination, not what rights parties *may* petition for under the statute. Thus, RCW 26.10.040 cannot be reasonably construed to serve as a statutory basis for seeking third-party visitation outside of a custody proceeding.

To support his statutory claim, Mr. Shmilenko points to the fact that none of the cases addressing the constitutionality of third-party visitation statutes touch on the validity of third-party visitation under RCW 26.10.030 or .040. Br. of Resp't at 11-13 (citing *L.B.*, 155 Wn.2d 679; *C.A.M.A.*, 154 Wn.2d 52; *Smith*, 137 Wn.2d 1). However, RCW 26.09.240 and RCW 26.10.160, were the *only* statutes in Title 26 RCW that expressly created a right to third-party visitation. Third-party visitation

14

as it pertains to RCW 26.10.030 and .040 was not addressed in our previous cases because no such right is enumerated in either of these provisions. Judicial silence on the matter is not evidence to the contrary.

It bears repeating that what our cases *do* say—and say unequivocally—is "until the legislature amends the relevant statutes, there exists no statutory right to third party visitation in Washington." *L.B.*, 155 Wn.2d at 714-15. While Mr. Shmilenko asserts this precedent is not controlling here because the cases dealt only with the third-party visitation statutes, the analysis above shows that there is no other statute that could provide an independent basis for third-party visitation. It is the province of the legislature—not this court—to create such rights.[5]

### 2. *Policy considerations*

When it affirmed the unconstitutionality of Washington's third-party visitation provisions, the United States Supreme Court observed that the language of RCW 26.10.160(3) was "breathtakingly broad." *Troxel*, 530 U.S. at 67. The provision allowed "[a]ny person" to petition for court-ordered visitation with a child at "any time." RCW 26.10.160(3), *invalidated by Smith*, 137 Wn.2d 1.

---

[5] Mr. Shmilenko further contends that our cases are not controlling here because this case does not implicate the liberty interests of natural or legal parents. While this is true, the fact that a parent's liberty interests are not involved in this case does not change the analysis. The third-party visitation statutes have been struck down as *facially* unconstitutional, and therefore no such right exists regardless of the parties or interests involved. *See Moore*, 151 Wn.2d at 669 ("The remedy for holding a statute facially unconstitutional is to render the statute totally inoperative.").

Reading a right to petition for third-party visitation into chapter 26.10 RCW, as Mr. Shmilenko urges, would have troubling and far-reaching consequences. Neither RCW 26.10.030 nor .040 would provide any protections against unwarranted intrusion or standards for determining when granting visitation is appropriate.

First, RCW 26.10.040 provides no limitation on who would be able to petition for third-party visitation rights. The way in which Mr. Shmilenko interprets RCW 26.10.040 would allow *any* third-party to petition for visitation rights with a child. This is precisely the "breathtakingly broad" scope that we were concerned with in *Smith*. *Troxel*, 530 U.S. at 67. We observed that the third-party visitation provisions

> lack other safeguards to prevent stable families from defending in court against frivolous petitions for visitation. Most notably the statutes do not require the petitioner to establish that he or she has a substantial relationship with the child. . . . Also, the statutes do not require the court to take into consideration such factors as the parents' reasons for restricting visitation with the petitioner or any allegations of past physical or mental abuse by petitioner when making a visitation determination.

*Smith*, 137 Wn.2d at 20-21. That a natural or legal parent's rights are not involved here does not change the fact that nothing in the statute would prevent a distant or estranged relative, a complete stranger, or any other third party, for that matter, from petitioning for visitation.

Further, there are no standards to guide courts in deciding whether to grant

visitation. Recognizing a right to third-party visitation in the absence of a statute

that sets forth protective requirements or standards would make our state an outlier,

even among the jurisdictions that explicitly provide for third-party visitation. *See*

Jeff Atkinson, *Shifts in the Law Regarding the Rights of Third Parties to Seek*

*Visitation and Custody of Children*, 47 FAM. L.Q. 1, 3 (2013). A recent survey

found:

> Most third-party visitation statutes list factors a court should
> consider when deciding whether to grant visitation. Common factors
> include: the amount and quality of contact between the child and the
> third party; the quality of the child's relationship with the parents; the
> effect of the relationship (or absence of relationship) between the
> child and the third party; the preferences of the child; the mental and
> physical health of all individuals involved; and a history of or threat of
> domestic violence or child abuse.

*Id.* Of the jurisdictions with operating third-party visitation statutes, a strong

majority enumerate factors that must be addressed to determine whether visitation

should be granted. *See id.* app. I at 18-24.[6]

---

[6] While the dissent is correct that RCW 26.10.030(2) limits intervention in custody proceedings to an "'interested party,'" dissent at 7, the fact still remains that there is no statutory provision that would prevent any potentially interested party from seeking to intervene in the first place. We do not doubt the ability of judges to evaluate the appropriateness of intervention, but the statute as written provides no mechanism for protecting families from having to defend against unwarranted intervention at the outset. Furthermore, by characterizing the issue as a procedural matter, the dissent does not take into account the fact that there is no right to third-party visitation in Washington. Mr. Shmilenko seeks a right that has no statutory basis, and the dissent would recognize a remedy where none exists.

Third-party visitation under RCW 26.10.030 and .040 would give no deference to the wishes of legal custodians like the Miniums. While they are not M.W.'s legal parents, the Miniums have broad discretion to determine M.W.'s upbringing as his legal custodians, *see* RCW 26.10.170 ("Except as otherwise agreed by the parties in writing at the time of the custody decree, the custodian may determine the child's upbringing."), and have been granted sole decision-making authority with regard to M.W., CP at 27. We continue to recognize that "[t]he family entity is the core element upon which modern civilization is founded. Traditionally, the integrity of the family unit has been zealously guarded by the courts. The safeguarding of familial bonds is an innate concomitant of the protective status accorded the family as a societal institution." *Smith*, 137 Wn.2d at 15. There is no reason that a child, like M.W., should lose the integrity and stability of his family structure solely because he is already in the unfortunate position of having lost his biological parents.[7]

B. EQUITABLE CLAIM

In the absence of a statutory remedy, Mr. Shmilenko asserts that we should provide him with a remedy in equity, invoking the equitable power that we

---

[7] The dissent's assertion that M.W. will "lose his family structure with his paternal grandparents, the Shmilenkos," dissent at 7, is not supported by the facts. As previously noted, Mr. Shmilenko has sustained a relationship with M.W. through his wife's visitation rights pursuant to a prior agreed order with the Miniums. Only Mr. Shmilenko's right to petition for court-ordered visitation with M.W. is at issue here, and there is no indication that Mrs. Shmilenko's visitation rights will be curtailed.

18

exercised in *L.B.* to recognize the de facto parent doctrine. While we do not question the current viability of the de facto parent doctrine, it has no applicability in the present case.

In *L.B.*, we adopted a stringent test for establishing de facto parentage and stated that "attaining such recognition should be no easy task." 155 Wn.2d at 712. To establish standing as a de facto parent, the following criteria must be satisfied:

> "(1) the natural or legal parent consented to and fostered the parent-like relationship, (2) the petitioner and the child lived together in the same household, (3) the petitioner assumed obligations of parenthood without expectation of financial compensation, and (4) the petitioner has been in a parental role for a length of time sufficient to have established with the child a bonded, dependent relationship, parental in nature."

*Id.* at 708 (quoting *In re Parentage of L.B.*, 121 Wn. App. 460, 487, 89 P.3d 271 (2004)). We further stated that "recognition of a *de facto* parent is 'limited to those adults who have fully and completely undertaken a permanent, unequivocal, committed, and responsible *parental* role in the child's life.'" *Id.* (quoting *C.E.W. v. D.E.W.*, 2004 ME 43, 845 A.2d 1146, 1152) (second emphasis added).

Mr. Shmilenko would not be able to meet these strict requirements. Mr. Shmilenko himself characterizes his relationship with M.W. as one that is "'grandparent-like,'" Br. of Resp't at 9, so it cannot be said that he has assumed the obligations of parenthood or established a bonded, dependent relationship that is parental in nature.

19

Moreover, the fact that de facto parents stand "in parity with biological and adoptive parents in our state," *L.B.*, 155 Wn.2d at 710, illustrates the unsuitability of the de facto parent doctrine in this case. Amicus Legal Voice points out that if Mr. Shmilenko were to establish de facto parent status, he would become M.W.'s *only* legal parent, with constitutionally protected rights superior to M.W.'s legal custodians, the Miniums. Br. of Amicus Curiae Legal Voice at 11. This is an extraordinary remedy for a party who seeks only visitation rights.

Mr. Shmilenko conceded at oral argument that he never wanted to establish himself as M.W.'s de facto parent and was requesting only visitation rights. Wash. Supreme Court oral argument, *In re Custody of M.W.*, No. 90072-8 (June 25, 2015), at 32 min., 40 sec., *audio recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org. The de facto parent claim was advanced only at the behest of the trial court. Admitting that the de facto parent doctrine is "a rough fit for the case at bar," Br. of Resp't at 17, Mr. Shmilenko asks this court to recognize a right to third-party visitation under its equitable powers. The circumstances in this case do not warrant the fashioning of such an extraordinary remedy by this court.

Mr. Shmilenko claims that here, as in *L.B.*, he is without an adequate statutory remedy. We find this analogy unpersuasive. In *L.B.*, the parties were in a same-sex domestic partnership when the child was conceived and had been raising

20

the child together in a "coparenting" arrangement. *L.B.*, 155 Wn.2d at 682. When the child, L.B., was six years old, the parties "ended their relationship and an acrimonious spate of litigation over access to L.B. ensued." *Id.* One of the coparents was neither biologically nor legally related to L.B., and there was no statutory basis under which she could petition for parental rights. We therefore considered "whether, in the absence of a statutory remedy, the equitable power of our courts in domestic matters permits a remedy *outside* of the statutory scheme or, conversely, whether our state's relevant statutes provide the exclusive means of obtaining parental rights and responsibilities." *Id.* at 688.

In determining whether it was appropriate to exercise our equitable powers in *L.B.*, we observed that

> Washington courts have consistently invoked their equity powers and
> common law responsibility to respond to the needs of children and
> families in the face of changing realities. We have often done so in
> spite of legislative enactments that may have spoken to the area of the
> law, but did so incompletely.

*Id.* at 689. Recognizing that "inevitably, in the field of familial relations, factual scenarios arise, which even after a strict statutory analysis remain unresolved, leaving deserving parties without any appropriate remedy," *id.* at 687, we adopted the de facto parent doctrine "to fill the interstices that our current legislative enactment fails to cover," *id.* at 707. Mr. Shmilenko contends his situation similarly warrants an equitable remedy.

21

However, the legislature had been "conspicuously silent when it [came] to the rights of children like L.B., who are born into nontraditional families, including any interests they may have in maintaining their relationships with the members of the family unit in which they are raised."[8] *Id.* at 694. The third-party visitation Mr. Shmilenko seeks is different—it is a scenario that the legislature *did* expressly contemplate when it enacted third-party visitation statutes. As discussed above, those statutes were held facially unconstitutional 17 years ago. We have explicitly held that "until the legislature amends the relevant statutes, there exists no statutory right to third party visitation in Washington." *Id.* at 714-15. And, presumably aware of our case law, the legislature has declined to amend the relevant statutes. *Cf. City of Federal Way v. Koenig*, 167 Wn.2d 341, 348, 217 P.3d 1172 (2009). This is not just a case of simple legislative silence, but of clear legislative abstention.

We do not doubt or question the quality of Mr. Shmilenko's relationship with his step-grandson, but it is not the province of this court to step in and fashion a remedy where the legislature has clearly abstained from doing so. If third-party visitation is to be recognized in this state, it should be through the legislative process. *Cf. Buchanan v. Int'l Bhd. of Teamsters*, 94 Wn.2d 508, 511, 617 P.2d 1004 (1980) ("The legislature, within constitutional constraints, is the body to

---

[8] We decided *L.B.* prior to the legalization of same-sex marriage in this state.

make the policy decisions on this matter. The failure of the legislature to amend the statute in the 17 years since [our] decision was rendered convinces us that it was and is the policy of the legislature to concur in that result."). Consequently, we hold that Mr. Shmilenko does not have an equitable claim for third-party visitation.

## C. ATTORNEY FEES

The Miniums seek attorney fees under RCW 26.10.080, which authorizes this court to award attorney fees to a party for "maintaining or defending any proceeding under this chapter." Mr. Shmilenko argues against an award of attorney fees on the ground that his statutory claim for visitation was the only proceeding maintained under chapter 26.10 RCW, which was dismissed by the trial court. Br. of Resp't at 23. However, this argument ignores that Mr. Shmilenko's nonparental custody petition was consolidated with the underlying custody proceeding originally maintained by the Miniums, CP at 87-88, which was brought pursuant to RCW 26.10.030(1). Moreover, Mr. Shmilenko does not limit his briefing to the possibility of an equitable remedy—he plainly urges this court to find a statutory basis for third-party visitation within chapter 26.10 RCW. *See* Br. of Resp't at 10-14. Consequently, there is an existing proceeding under chapter 26.10 RCW on which an award for attorney fees could be made.

23

Our authority to award attorney fees is discretionary, and RCW 26.10.080 requires that the court "balance the needs of the party requesting fees against the other parties' ability to pay." *In re Custody of Brown*, 153 Wn.2d 646, 656, 105 P.3d 991 (2005). The Miniums have submitted a financial declaration consistent with RAP 18.1(c) asserting that due to the cost of defending against Mr. Shmilenko's de facto parent claim, their expenses now exceed their income by more than $2,000. Fin. Decl. of Pet'rs at 4. Though claiming that the cost of litigation has been "financially debilitating," Mr. Shmilenko refuses to disclose his financial information.[9] John Shmilenko's Resp. to Fin. Decl. of Pet'rs at 5. Without a financial declaration from Mr. Shmilenko, this court is unable to balance the financial needs of the parties as required by RCW 26.10.080. We therefore hold that the Miniums are entitled to attorney fees on appeal if the trial court on remand determines that it would be appropriate "after considering the financial resources of all parties." RCW 26.10.080.

CONCLUSION

The ways in which modern families can be arranged are myriad. It is not uncommon for children to be in the care of relatives who may not be their legal parents—these families are no less deserving of protection from unwanted

---

[9] The Miniums moved to strike Mr. Shmilenko's response to their financial declaration as untimely, and Mr. Shmilenko moved to enlarge the time to file his response. The court passed those motions to the merits, and now denies the Miniums' motion and grants Mr. Shmilenko's.

intrusion. Allowing *any* third party to petition for visitation poses a serious threat to the stability of these nontraditional families. We sympathize with Mr. Shmilenko's desire to ensure a continued relationship with his step-grandson, but he is not M.W.'s legal parent, guardian, or custodian. While he may care about his step-grandson very much, the statute, by design, limits the parties who can interfere in such an intimate part of a child's life. This result may seem harsh in the instant case, but Mr. Shmilenko seeks a right that does not exist under our laws.

There is no statutory right to third-party visitation under our laws, and we decline to exercise our equitable powers to create such a right. Consequently, we reverse and remand for dismissal of Mr. Shmilenko's petition and the determination of attorney fees.

WE CONCUR:

*In the Matter of the Custody of M.W.*

No. 90072-8

MADSEN, C.J. (concurring)—I agree with the majority that the petition of M.W.'s step-grandfather, John Shmilenko, must be dismissed under the circumstances of this case. I write separately to emphasize that in my view because Mr. Shmilenko was not a party in the original custody proceeding that yielded the original order entered on March 23, 2010 establishing custody and visitation rights concerning M.W., Mr. Shmilenko may not subsequently intervene to modify that order to seek visitation.

M.W.'s maternal grandparents, Greg and Linda Minium, filed the noted petition for nonparental custody in Cowlitz County Superior Court, naming only M.W.'s paternal grandmother, Patti Shmilenko, as the sole respondent. John Shmilenko was not named as a party, and he did not attempt to intervene. The Miniums brought the petition under RCW 26.10.030, which authorizes "a child custody proceeding" regarding a child "not in the physical custody of one of its parents" to be "commenced in the superior court by a person other than a parent[] by filing a petition seeking custody of the child" in the county where the child resides or is found. RCW 26.10.030(1). The statute further provides that notice of such "child custody proceeding shall be given to the child's parent, guardian and custodian" and additionally provides that "[t]he court may, upon a

showing of good cause, permit the *intervention* of *other interested parties*." RCW 26.10.030(2) (emphasis added). Further, RCW 26.10.040 provides in relevant part that when entering an order resulting from such proceeding, "the court shall consider, approve, or make provision for . . . [c]hild custody, visitation, and the support of [the] child." RCW 26.10.040(1)(a). Accordingly, under these provisions, Mr. Schmilenko's procedural opportunity to intervene was at the original RCW 26.10.030 custody proceeding, but he did not seek to do so. There is no statutory basis for Mr. Schmilenko, who is a nonparty to the 2010 custody decree, to intervene in a subsequent proceeding concerning modification of the original custody order.[1]

As for Mr. Schmilenko's consolidated RCW 26.10.030(1) nonparent custody petition, which sought only visitation and not custody, I agree with the dissent's concession that "one can commence a proceeding under RCW 26.10.030 only to seek custody, not visitation." Dissent at 1. I also agree with the majority that Mr. Schmilenko "does not have an equitable claim for third-party visitation." Majority at 23. However, Mr. Shmilenko could have, but did not, intervene in the original proceedings solely for the purpose of requesting visitation. Because he did not, I concur that John Schmilenko's petition must be dismissed.

---

[1] Modification of the 2010 custody decree and residential schedule was sought by Patti Schmilenko in 2013 under CR 4.1; RCW 26.09.181, .260, and .270; and RCW 26.26.130(7)(b), none of which provide for intervention in a modification proceeding by a nonparty.

Madsen, C.J.

No. 90072-8

WIGGINS, J. (dissenting)—I can agree with the majority's interpretation that one can commence a proceeding under RCW 26.10.030 only to seek custody, not visitation. But I cannot agree when the majority prohibits anyone from intervening in a pending custody action in order to seek only visitation with the child instead of custody of the child. The unambiguous language of RCW 26.10.030 plainly allows intervention without limiting the purpose of the intervenor, whether for custody or visitation. Nor can I agree with the majority's reliance on assertions in cases that never cite or discuss RCW 26.10.030 and .040 to support the conclusion that these two sections cannot be interpreted to allow visitation to a third party.

"Our fundamental purpose in construing statutes is to ascertain and carry out the intent of the legislature." *In re Marriage of Schneider*, 173 Wn.2d 353, 363, 268 P.3d 215 (2011). "We determine legislative intent from the plain language enacted by the legislature, considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, amendments to the provisions, and the statutory scheme as a whole." *W. Plaza, LLC v. Tison*, 184 Wn.2d 702, 708, 364 P.3d 76 (2015) (citing *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146

Wn.2d 1, 9-12, 43 P.3d 4 (2002)). The plain language of RCW 26.10.030 and .040

provides that trial courts may allow interested parties to intervene in a pending

custody petition to seek visitation with a child who has no living parents upon a

showing of good cause.

I begin with the language of the statutes. RCW 26.10.030 defines who may

intervene in existing child custody proceedings:

> (1) . . . [A] child custody proceeding is commenced in the superior court by a person other than a parent[] by filing a petition seeking custody of the child in the county where the child is permanently resident or where the child is found, but only if the child is not in the physical custody of one of its parents or if the petitioner alleges that neither parent is a suitable custodian. . . .
>
> (2) Notice of a child custody proceeding shall be given to the child's parent, guardian and custodian, who may appear and be heard and may file a responsive pleading. *The court may, upon a showing of good cause, permit the intervention of other interested parties.*
>
> (3) The petitioner shall include in the petition the names of any adult members of the petitioner's household.

(Emphasis added.) When a statute is clear on its face, we look only to the wording

of the statute. *Ass'n of Wash. Spirits & Wine Distribs. v. Wash. State Liquor Control

Bd.*, 182 Wn.2d 342, 351, 340 P.3d 849 (2015). Under the plain language of RCW

26.10.030(2), when a child custody proceeding is already commenced, the trial court

has the discretion to permit "other interested parties" to join the proceeding upon a

showing of good cause.

2

RCW 26.10.040(1), in turn, directs the court entering an order under RCW 26.10.030 to "consider, approve, or make provision for: (a) [c]hild custody, *visitation*, and the support of any child entitled to support." (Emphasis added.) Reading RCW 26.10.030 and .040 together lead to the following sequence: a party seeking custody may file under section .030; the court may permit the intervention of "other interested parties"; and upon entering an order, the trial court must determine the propriety of ordering visitation. Placing Gregory and Linda Minium and Patti and John Shmilenko into this sequence: the Miniums commenced a custody petition; Mr. Shmilenko sought to intervene as an "other interested part[y]"; and the trial court was willing to consider whether to allow Mr. Shmilenko visitation.

This interpretation of the language of the statutory scheme is not only plain on its face, it is logical if not inescapable. In fact, when the Miniums filed this custody petition under RCW 26.10.030, Clerk's Papers (CP) at 3, they named the Shmilenkos in the petition and acknowledged that the court should determine the Shmilenkos' visitation rights, CP at 5:

Claims to custody or visitation.

> The petitioners do not know of any other person who has physical custody of, or claims to have custody of the child. It is the petitioners' understanding however, that the paternal grandmother and the step-grandfather, John and Patti Shmilenko, would like to have court-ordered visitation.

. . . .

3

1.9   VISITATION.

> The court shall determine what visitation rights on the part of the paternal grandmother and step-grandfather are in the best interests of the minor child.

In short, custody proceedings are not "winner take all" contests. One party becomes the primary custodian, and the other is usually granted visitation.

This plain language reading is also supported by the other provisions of chapter 26.10 RCW. We consider "all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question" when determining the meaning of the plain language. *Campbell & Gwinn*, 146 Wn.2d at 11. In this case, RCW 26.10.010 states that "[i]t is the intent of the legislature to reenact and continue the law relating to third-party actions involving custody of minor children . . . ." As noted above, the legislature made provisions under chapter 26.10 RCW for trial courts to join third parties to custody proceedings and make visitation determinations. Because the legislature authorized the trial court to make third-party visitation determinations in custody proceedings, the plain language of RCW 26.10.030 and .040 aligns with the legislative intent stated in RCW 26.10.010.

Even a cursory review of chapter 26.10 RCW reveals that visitation is mentioned repeatedly throughout the chapter: RCW 26.10.070 ("The court may appoint an attorney to represent the interests of a minor or dependent child with respect to custody, support, and *visitation*." (emphasis added)), .090 ("If a party fails to comply with a provision of an order or temporary order of injunction, the obligation of the other party to make payments for support or to permit *visitation* is not

4

suspended, but the party may move the court to grant an appropriate order." (emphasis added)), .120 ("The court may interview the child in chambers to ascertain the child's wishes as to his or her custodian and as to *visitation* privileges." (emphasis added)), .180 (" A relative may bring civil action against any other relative who, with intent to deny access to a child by another relative of the child who has a right to physical custody of or *visitation* with the child, takes, entices, or conceals the child from that relative." (emphasis added)), .190(1) ("The court shall hear and review petitions for modifications of a parenting plan, custody order, *visitation* order, or other order governing the residence of a child, and conduct any proceedings concerning a relocation of the residence where the child resides a majority of the time, pursuant to chapter 26.09 RCW." (emphasis added)). These pervasive references to visitation persuasively demonstrate that the legislature considered visitation to be an important aspect of custody and contradict the majority's conclusory statement that RCW 26.10.030 and .040 do not create any rights to third-party visitation.

I.    The majority's analysis

The majority fails to acknowledge the provision of RCW 26.10.030(2) that the trial court may "upon a showing of good cause, permit the intervention of other interested parties." The statute does not require that "interested parties" seek custody. There is no reason that a person with a relationship with the child or children could not seek to intervene for the purpose of maintaining and deepening that relationship with the child. We cannot ignore the very language of a statute we are interpreting. We interpret statutes as a whole, giving effect to all language used.

5

*C.J.C. v. Corp. of Catholic Bishop of Yakima*, 138 Wn.2d 699, 708 (1999); *see also*
*Campbell & Gwinn*, 146 Wn.2d at 11. The majority's unwillingness to recognize the
availability of intervention here results in an opinion that is flawed.

The majority argues that our interpretation of the statute would allow "a distant
or estranged relative, a complete stranger, or any other third party," to intervene in
the action. Majority at 16. The majority underestimates the ability of our trial judges
to recognize that a "complete stranger" is not an "interested" party. The statute
expressly gives the trial judge discretion when it recites that the trial court "may, upon
a showing of good cause," permit intervention. RCW 26.10.030(2).

This case illustrates the very situation in which a court should allow
intervention. The parents of M.W. were both killed in a tragic accident. Neither set of
grandparents has an inherently superior claim to the other. Regardless of which
grandparents are given custody, the other grandparents should be given visitation
rights. The majority never explains why denial of visitation promotes public policy.

The majority protests that "there are no standards to guide courts in deciding
whether to grant visitation." Majority at 17. This is a nonissue; the guiding standard
for all child custody and visitation decisions is the well-known "best interests of the
child" standard. RCW 26.09.002. We readily adopted this standard when we created
the de facto parent doctrine. *In re Parentage of L.B.*, 155 Wn.2d 679, 707, 122 P.3d
161 (2005) (recognizing "the clear legislative intent that permeates this field of law—
to effectuate the best interests of the child in the face of differing notions of family
and to provide certain and needed economical and psychological support and

6

nurturing to the children of our state"). The best interests of the child provides a workable standard for third-party visitation by grandparents, just as it does for de facto parents.

The majority worries that allowing Mr. Shmilenko to intervene to seek visitation will encourage "unwarranted intrusion" into M.W.'s life. Majority at 16. Again, the majority ignores the protections of the statute: an intervenor must be an "interested party," and visitation must be in the best interests of the child. And once a custody order is entered, an order can be modified only "pursuant to chapter 26.09 RCW", RCW 26.10.190(1), which allows only minor modifications unless the court finds, "upon the basis of facts that have arisen since the prior decree or plan or that were unknown to the court at the time of the prior decree or plan, that a substantial change has occurred in the circumstances of the child or the nonmoving party and that the modification is in the best interest of the child and is necessary to serve the best interests of the child." RCW 26.09.260(1). There should be no fear of "unwarranted intrusion."

The majority argues that "[t]here is no reason that a child, like M.W., should lose the integrity and stability of his family structure solely because he is already in the unfortunate position of having lost his biological parents." Majority at 18. I agree, but this sword cuts both ways. Just as there is no reason that M.W. should lose his family structure with his maternal grandparents, the Miniums, so there is no reason M.W. should lose his family structure with his paternal grandparents, the Shmilenkos.

7

Therefore, although the trial court initially denied the Shmilenkos' original motion, the court's subsequent order allowing Mr. Shmilenko to join the custody proceedings was proper under RCW 26.10.030 and .040. When Mrs. Shmilenko moved to modify her rights to visit with M.W. after he turned six years old, she also moved to permit Mr. Shmilenko to intervene in the existing custody proceeding, alleging that Mr. Shmilenko has a "close and loving grandparent bond" with M.W. and that he treats M.W. "as if they were biologically related and is his own grandchild." CP at 44-46. Mrs. Shmilenko's motion supports the conclusion that Mr. Shmilenko had good cause to intervene as an interested party. In his own petition, Mr. Shmilenko simply asked for adjudication of his own rights, either through joinder or through consolidation. The trial court clearly believed that Mr. Shmilenko was an appropriate person to join to the custody proceeding—the court said that it would join a separate petition by Mr. Shmilenko to the custody proceeding because that would be "in the interest of justice and of the efficient adjudication of both matters." CP at 66.

II.    This plain language application of RCW 26.10.030 and .040 is not foreclosed by prior case law

The majority states that "'until the legislature amends the relevant statutes, there exists no statutory right to third party visitation in Washington.'" Majority at 14 (quoting *In re Parentage of L.B.*, 155 Wn.2d at 714-15 (citing *In re Parentage of C.A.M.A.*, 154 Wn.2d 52, 109 P.3d 405 (2005); *In re Custody of Smith*, 137 Wn.2d 1, 969 P.2d 21 (1998), *aff'd on other grounds sub nom. Troxel v. Granville*, 530 U.S.

8

57, 72-73, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000)). However, neither *L.B.*, 155 Wn.2d 679, *C.A.M.A.*, 152 Wn.2d 52, nor *Smith,* 137 Wn.2d 1, considered the constitutionality of RCW 26.10.030 or .040, and, therefore, none of these cases preclude the trial court from joining Mr. Shmilenko to the custody proceeding to allow him to seek visitation.

In *Smith*, this court held that RCW 26.10.160(3) and RCW 26.09.240 unconstitutionally permit third parties to petition for custody or visitation of the child of a parent who is fit to raise his or her child. 137 Wn.2d at 21. RCW 26.10.160(3) provides that "[a]ny person may petition the court for visitation rights at any time including, but not limited to, custody proceedings" and that the court "may order visitation rights for any person when visitation may serve the best interest of the child. . . ." We held in *Smith* that subsection .160(3) "impermissibly interfere[s] with a *parent's* fundamental interest in the 'care, custody and companionship of the child,'" *Smith*, 137 Wn.2d at 21 (emphasis added) (quoting *In re Welfare of Sumey*, 94 Wn.2d 757, 762, 621 P.2d 108 (1980)), because "the standard of 'best interest of the child' is insufficient to serve as a compelling state interest overruling a parent's fundamental rights," *id.* at 20. When the United States Supreme Court reviewed *Smith* and examined the underlying statute, it stated that RCW 26.10.160(3) was unconstitutional "*as applied in this case*" for the same reason—the statute interfered with the parent's "fundamental right to make decisions concerning the care, custody, and control of her two daughters." *Troxel*, 530 U.S. at 72, 73 (emphasis added). *Smith* is not a barrier to Mr. Shmilenko's request for visitation because he is not

9

proceeding under RCW 26.10.160, which was declared unconstitutional in *Smith*, but under RCW 26.10.030 and .040.

Similarly, in *L.B.*, we stated that *Smith* had held RCW 26.10.160(3) facially unconstitutional, citing *C.A.M.A.*, 154 Wn.2d at 61. *See L.B.*, 155 Wn.2d at 713-14. But *C.A.M.A.* dealt only with RCW 26.09.240, RCW 26.10.160(3)'s analogue for dissolution proceedings; the opinion never mentioned RCW 26.10.160(3)—or any other provision in chapter 26.10 RCW, for that matter. And as in *Smith* and *Troxel*, our constitutional analyses in *C.A.M.A.* and *L.B.* emphasized that the visitation statutes were unconstitutional in cases where a "fit parent" objects to a nonparent's visitation request. *C.A.M.A.*, 154 Wn.2d at 68; *L.B.*, 155 Wn.2d at 714. *L.B.* itself implicitly recognized both of these limitations of *C.A.M.A.*:

> This court held [in *C.A.M.A.*] that in order to comply with the *Smith* requirement that harm to the child must be demonstrated to order visitation *over the objection of a fit parent*, courts would be required to apply a "'harm to the child' standard" as opposed to or in addition to the current "best interests of the child" standard. Because we concluded in *Smith* that "we will not read qualifications into [a] statute which are not there," we invalidated *RCW 26.09.240* in its entirety.

*L.B.*, 155 Wn.2d at 714 (emphasis added) (alteration in original) (citations omitted) (quoting *C.A.M.A.*, 154 Wn.2d at 68; *Smith*, 137 Wn.2d at 12). In other words, the statute would have to be rewritten in order for it to be constitutionally applied in cases where a fit *parent* objects to a visitation petition.

*L.B.* and *C.A.M.A.* are no more of a barrier to Mr. Shmilenko than *Smith*—neither case mentions RCW 26.10.030 or .040. The broad language of *L.B.* quoted above by the majority—"Washington's current third party visitation statutes are

10

unconstitutional and inoperative and thus unavailable as an alternative ground on which to seek visitation" (majority at 10)—is dictum as to statutes never mentioned in those cases, including RCW 26.10.030 and .040.

In contrast to subsection .160(3), which allows "[a]ny person" to petition for court-ordered visitation "at any time," section .030 protects the fundamental rights of parents by permitting petitions only when the child "is not in the physical custody of one of its parents or if the petitioner alleges that neither parent is a suitable custodian." RCW 26.10.030(1). Neither this court nor the United States Supreme Court held—and neither had any reason to consider—that a visitation statute that does not infringe on a parent's fundamental rights is unconstitutional. Our decision in *Smith* and the supporting rationale for that decision do not preclude Mr. Shmilenko from filing a custody petition seeking visitation under section .030 where the child is in the custody of a nonparent.

Further, our plain language interpretation of RCW 26.10.030 and .040 does not expose persons who have been given lawful custody of a child to harassment and oppression through the filing of duplicative and meritless petitions for custody or visitation. As discussed above, the legislature wisely limited third-party custody actions. RCW 26.10.190(1) requires courts to "hear and review petitions for modifications of" residential orders "pursuant to chapter 26.09 RCW"; in such cases—including M.W.'s—RCW 26.09.260 limits the circumstances under which the court may modify an existing residential schedule:

11

> [T]he court shall not modify a prior custody decree or a parenting plan unless it finds, upon the basis of facts that have arisen since the prior decree or plan or that were unknown to the court at the time of the prior decree or plan, that *a substantial change has occurred in the circumstances of the child or the nonmoving party* and that the modification is in the best interest of the child and is necessary to serve the best interests of the child.

RCW 26.09.260(1)[1] (emphasis added). Section .260 adequately restricts modifications to those necessary to accommodate a substantial change in circumstances of the child or nonmoving party, which effectively removes any concern about the prospect of duplicative and meritless petitions for custody or visitation. This is in addition to the safeguard of RCW 26.10.030(2), which gives the trial court discretion to grant or deny third-party intervention upon a showing of good cause.

Even further, here, the parties recognize that beginning school constituted a substantial change in M.W.'s circumstances—section 3.2 of the agreed custody order explicitly stated that it would be "appropriate to review the child's developmental stage and visitation issues at that time" due to M.W.'s enrollment in school. The custody agreement entered in 2010 reserved for later determination M.W.'s visitation schedule for "[a]ge 5 thereafter," and it probably would have been a practical impossibility to implement the 2010 visitation schedule after M.W. enrolled

---

[1] By contrast, RCW 26.10.160(3) permits anyone to petition for visitation rights with a child whether or not there has been a change in circumstances. We declared RCW 26.10.160(3) unconstitutional in *Smith* because it permitted this virtually unlimited right to file a petition for visitation. 137 Wn.2d at 21 (subsection .160(3) "impermissibly interfere[s] with a parent's fundamental interest in the 'care, custody and companionship of the child'" (quoting *Sumey*, 94 Wn.2d at 762)).

12

in school—section 3.1 of the parenting plan specified that M.W. would visit with Mrs. Shmilenko on Tuesdays and Thursdays from 1:00 pm to 7:00 pm—in other words, during normal school hours.

Therefore, under an existing custody proceeding, Mr. Shmilenko properly asserted his claim to third-party visitation pursuant to RCW 26.10.030 and .040. Because Mr. Shmilenko has a statutory basis to assert a visitation claim and the trial court found that there was good cause for him to join, I would reverse the Court of Appeals and remand for further proceedings consistent with this opinion.

For these reasons, I respectfully dissent.

Wiggins, J.

González, J.

14