**FILED**
**JANUARY 19, 2021**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Visits with: | ) | No.  37162-0-III |
| | ) | |
| C.S.,[1] | ) | |
| | ) | |
| Minor Child, | ) | |
| | ) | |
| JUAN STEWART and | ) | |
| DENA STEWART, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellants, | ) | |
| | ) | |
| JOSEPH STEWART III and | ) | |
| JENNIFER KASTELEIN, | ) | |
| | ) | |
| Respondents. | ) | |

LAWRENCE-BERREY, J. — Juan Stewart and Dena Stewart, C.S.'s paternal grandparents, appeal the trial court's denial of their petition for visitation and its award of attorney fees.  We affirm.

---

[1] To protect the privacy interests of the minor, we use his initials throughout this opinion.  General Order for the Court of Appeals, *In re Changes to Case Title*, (Aug. 22, 2018), effective Sept. 1, 2018, http://www.courts.wa.gov/appellate_trial_courts/?fa=atc.genorders_orddisp&ordnumber=2018_001&div=III.

FACTS

Joseph Stewart and Jennifer Kastelein have one child, C.S, who was born in 2006. Shortly thereafter, Joseph[2] and Ms. Kastelein voluntarily placed C.S. with Joseph's parents, Juan and Dena, so they could "get their lives together." Clerk's Papers (CP) at 237. From then until 2018, C.S. lived at Juan and Dena's house. For much of that time, Joseph lived intermittently with his parents and C.S.

In 2007, Joseph and Ms. Kastelein separated, and Joseph was granted primary residential placement of C.S. From then on, Ms. Kastelein was not meaningfully involved in C.S.'s life.

The parties dispute the strength of C.S.'s bond with Joseph and whether Joseph sought a close relationship with C.S., or whether Juan and Dena undermined that relationship. The trial court did not enter any factual findings on these disputed issues. For this reason, we are unable to address details of this relationship.

But the record allows us to make some general observations. Juan and Dena served as de facto guardians while C.S. lived with them. Juan and Dena enrolled C.S. in private school, speech therapy, and medical care. At doctor's appointments, Dena

---

[2] Because the parties share the same last name, we use their first names for clarity.

2

sometimes referred to herself as C.S.'s mother. For some time, C.S. called Dena and Juan "mom and dad" and believed Joseph was his brother.

By July 2018, Joseph's life had changed. He now was married and was helping his wife raise two children of hers and a child they had together. Joseph sought to strengthen his relationship with C.S. and asked his parents to transition C.S. into his care. Over Juan and Dena's objections, C.S. went to live with Joseph. Juan then filed a petition for nonparental custody of C.S.

In October 2018, a court commissioner denied Juan's petition, finding he failed to establish adequate cause to modify the 2007 order granting Joseph custody. In its ruling, the commissioner found "no evidence that [Joseph] is an unfit parent." CP at 106. It also found "no evidence that removing the child from [Juan's] home to [Joseph's] home would cause a detrimental effect on the child" beyond merely changing households. CP at 106. The commissioner concluded, "The 2007 parenting plan is the only parenting plan that's currently in effect. This places [C.S.] in his father's primary care." CP at 79.

Following this, Juan and Dena contacted law enforcement on several occasions. They requested multiple welfare checks and asked police if they could bring C.S. back to their home. Law enforcement advised them that C.S. was safe and if they tried to bring C.S. to their home, they could be charged with kidnapping.

In January 2019, Juan and Dena filed this action, seeking nonparental visitation of C.S. After reviewing the petition, the court indicated the petition would likely be granted and ordered a hearing on the matter. Ms. Kastelein failed to respond to the petition and an order of default was entered against her.

In May 2019, Joseph responded to the petition. Joseph asserted that under his and his wife's care, C.S. was thriving—both academically and emotionally. He also asserted that his parents were abusive toward C.S., failed to care for C.S. properly, manipulated C.S.'s relationship with him for many years, and in the last several months had made repeated reports to law enforcement and Child Protective Services (CPS) that C.S. was being abused. Joseph described some of the reports and asserted that CPS found they were unsubstantiated. Joseph concluded:

> The Petitioners are detrimental to [C.S.'s] health and well-being. Their absolute neglect of his emotional and psychological well-being is inexcusable. . . . Not only did they attempt to damage the parent-child relationship between [C.S.] and I in the most extreme way possible, they knowingly and willingly traumatized him in [an] attempt to maintain control. I am deeply concerned about both [of] the petitioners' mental health.

CP at 102.

Joseph also requested advance attorney fees pursuant to RCW 26.11.050(1)(a). In his request, he stated:

> I have limited funds available and the constant petitions by Mr. and
> Ms. Stewart have caused me to exhaust my finances . . . to the limit.
> . . . .
> My financial situation is as follows: Both my wife and I are
> employed.  I work 40 hours a week and my wife works 30 hours a week.
> We both provide for and meet the needs of 4 children all under the age of
> 13.  We do not live on housing or state assistance, the rent of our residence
> increases every year.  We both lose [pay] when we are attending these court
> proceedings.  We have no assets that we can liquidate to cover court costs.
> The Petitioners' financial situation is that Juan Stewart has 5
> vehicles and an RV.  He has multiple financial accounts in multiple
> banks/credit unions.  He has multiple assets that can be liquidated easily.
> He receives retirement from the U.S. Navy and is currently suing his former
> [employer] for more than $400,000.

CP at 185.

In June 2019, Juan and Dena successfully moved to dismiss their petition.  Days

later, they filed a motion for reconsideration and asked for a trial.  Their motion reads in

part:

> If the court is considering awarding attorney fees under RCW 26.11.050(a),
> Petitioner [sic] seek to vacate the dismissal order and proceed to a hearing.
> The reason is that they would be ordered to pay for a hearing, which is one
> of the basis [sic] they were avoiding by dismissing the action in the first
> place.  Petitioners would never dismiss the action for a hearing that was
> already ordered to be paid.

CP at 194.

In June 2019, the court held a hearing on Joseph's request for attorney

fees and Juan and Dena's request to vacate the order of dismissal.  It noted that

RCW 26.11.050(1)(a) permits an award of advance attorney fees unless the financial circumstances of the parties make such an award unjust. Juan and Dena requested a continuance so they could file a declaration to rebut Joseph's declaration about their financial circumstances. The court granted their requested continuance, but warned that this might increase their attorney fee exposure. One month later, the parties presented an order to the trial court for its signature. The order vacated the June 6, 2019 order of dismissal and awarded unspecified attorney fees. Juan and Dena never filed a declaration about their financial circumstances.

The parties agreed to submit the case to the trial court on the pleadings previously filed and on argument. After hearing argument, the trial court explained its construction of the controlling statute, RCW 26.11.040 and the basis for its decision:

> So there are two prongs to this. The first prong is whether the child would suffer harm or the substantial risk of harm if I deny the visitation; and, the second prong is whether granting the visitation with the petitioner is in the best interest of the child.
>     . . . [T]he Court has no information that the father is not fit, the law would deem him to be fit, so a presumption attaches in this case . . . that his denial of visitation would not cause the child substantial harm or the risk of substantial harm if visitations were denied. So that's in place for the father and that's there to protect his right and constitutional interest.
>     To overcome that presumption, the petitioner's obligation is to prove . . . by clear and convincing evidence that the child would likely suffer harm or the substantial risk of harm if visitation to the petitioner and the child were not granted.
>     . . . .

In my review of the affidavits, I'm not convinced by clear, cogent, and convincing evidence the child would likely suffer harm. The best evidence that was produced is the fact that the child lived with the grandparents and the petitioning party for 12 years. That certainly is strong, relevant circumstantial evidence that would lend credibility to the position that the child would suffer harm from not having that continuity of relationship, but that in and of itself doesn't provide this Court with clear and convincing evidence that substantial harm or risk of harm by denying visitation would occur. There needs to be more.

Now, the law asks me to resolve that question first before turning to the question of whether it's in the best interest of the child. Frankly, that's an easier question for this Court to resolve. I think I could find it's in the best interest of the child to enter an order granting visitation just based on the factors; however, Element No. 1 is missing.

I'm not convinced by clear, cogent, and convincing evidence that the child would likely suffer harm or substantial risk of harm if visitation between the petitioner and child were not granted. So in this case the Court need not consider the second prong whether it meets the best interest of the child.

Report of Proceedings at 29-31. The court denied Juan and Dena's petition and ordered

them to pay $4,546.66 in reasonable attorney fees to Joseph.

Juan and Dena appealed.

ANALYSIS

VISITATION

A parent's fundamental right to autonomy in child rearing is protected as a matter

of substantive due process. *In re Parentage of C.A.M.A.*, 154 Wn.2d 52, 60-61, 109 P.3d

405 (2005). When a fit parent's decision to deny visitation is subject to judicial review,

we "accord at least some special weight to the parent's own determination." *Troxel v. Granville*, 530 U.S. 57, 70, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000) (plurality opinion).

In 2018, our legislature adopted chapter 26.11 RCW, which governs the rights of nonparental relatives to visit a child. LAWS OF 2018, ch. 183 (effective June 7, 2018). According to its provisions, a fit parent's denial of visitation is presumed to be in the best interest of the child. RCW 26.11.040(2). To rebut this presumption, the relative seeking visitation must prove by clear and convincing evidence that the child would likely suffer harm or the substantial risk of harm if visitation was not granted. RCW 26.11.040(1), (3). If the presumption is rebutted or if the presumption does not apply because the parent does not have custody of the child, the petitioning relative must then show by clear and convincing evidence that visitation is in the child's best interest. RCW 26.11.040(4). The statute lists numerous nonexclusive factors for the court to consider in making this determination. *Id.* We recently noted: "Provisions of the statute evince a legislative intent that relative visitation over a parent's objection will be ordered only in compelling circumstances." *In re Visits with R.V.*, 14 Wn. App. 2d 211, 214, 470 P.3d 531 (2020).

Juan and Dena argue the evidence clearly and convincingly established they were entitled to visitation with C.S. We disagree.

We review a trial court's denial of nonparental visitation for abuse of discretion. *Id.* at 221. Under this standard, a reviewing court will find error only when the trial court's decision (1) adopts a view that no reasonable person would take and is thus "manifestly unreasonable," (2) rests on facts unsupported in the record and is thus based on "untenable grounds," or (3) was reached by applying the wrong legal standard and is thus made for "untenable reasons." *State v. Sisouvanh*, 175 Wn.2d 607, 623, 290 P.3d 942 (2012).

We acknowledge that some circumstantial evidence permitted the trial court to find that C.S. would suffer harm or a substantial risk of harm unless the visitation was granted. This evidence, presented by Juan and Dena, was that they had raised C.S. for nearly all of his life at their own house and that C.S. was bonded to them and a young cousin. However, competing circumstantial evidence permitted the trial court to find that C.S. would not suffer harm or a substantial risk of harm if visitation was not granted. This evidence, presented by Joseph, was that C.S. was currently thriving under his and his wife's care. In other words, Joseph's evidence suggested that C.S. was doing very well despite the lack of visitation with his paternal grandparents.

We conclude the trial court did not abuse its discretion in finding, based on competing evidence, that C.S. would not suffer harm or a substantial risk of harm if visitation was denied.

ATTORNEY FEES

Juan and Dena contend the trial court erred by awarding Joseph attorney fees without considering their financial resources. We disagree.

"We apply a dual standard of review to a trial court's award of attorney fees." *Cook v. Brateng*, 180 Wn. App. 368, 375, 321 P.3d 1255 (2014). The awardability, or legal basis on which a trial court awards fees, is a question of law reviewed de novo. *Gander v. Yeager*, 167 Wn. App. 638, 646, 282 P.3d 1100 (2012). We review the decision to award or deny fees and the reasonableness of the amount for abuse of discretion. *Id.* The argument raised by Juan and Dena challenges the awardability of fees, so we apply a de novo standard.

The trial court's basis for awarding fees is RCW 26.11.050(1)(a), which provides,

[T]he court shall, on motion of the respondent, order the petitioner to pay a reasonable amount for costs and reasonable attorneys' fees to the respondent in advance and prior to any hearing, unless the court finds, considering the financial resources of all parties, that it would be unjust to do so.

10

We reject Juan and Dena's argument because it is not supported by the record. The trial court *did* consider Juan and Dena's financial circumstances. Joseph explained that his parents had substantial assets, while he had nothing. To the extent that Juan and Dena seek to imply they were not afforded an opportunity to rebut their son's declaration, the record is to the contrary. The trial court granted their continuance so they could file a late responsive declaration. Yet they failed to do so.

Juan and Dena also argue that the court may order fees "despite the financial resources of the parties" only if the petition was brought in bad faith. Appellant's Br. at 16. Because the trial court awarded fees after considering the financial resources of the parties, we need not address this additional argument.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____            _____
Pennell, C.J.                                              Siddoway, J.

11