**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

**FILED**
**MARCH 29, 2022**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Petition for Visits with | ) ) ) | No. 37890-0-III |
| A.S.A.,[†] | ) ) | |
| Minor child, | ) ) | |
| LINDA HARRIS, | ) ) | |
| Appellant, | ) ) | PUBLISHED OPINION |
| v. | ) ) | |
| ALISHA PRESSON, | ) ) | |
| Respondent, | ) ) | |
| RICHARD ARMSTEAD, | ) ) | |
| Defendant. | ) | |

STAAB, J. — After arguing over various personal issues, Alisha Presson stopped

visitation between her child, A.A., and her mother Linda Harris. Ms. Harris filed a

---

† To protect the privacy interests of the minor child, we use their initials
throughout this opinion. Gen. Order for Court of Appeals, *In re Changes to Case Title*
(Wash. Ct. App. Aug. 22, 2018) (effective September 1, 2018),
http://www.courts.wa.gov/appellate_trial_courts.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 37890-0-III
*In re Visits with A.A.*

petition for third-party visitation rights as the child's maternal grandparent, alleging that the mother made poor parenting choices. The trial court dismissed the petition for failing to meet the threshold showing that the petition was likely to succeed at a hearing. Ms. Harris timely appeals, alleging that her petition contains sufficient allegations rendering the trial court's dismissal an abuse of discretion.

We take this opportunity to clarify the statutory requirement of a petition to show that the child would suffer harm or substantial risk of harm if visitation is denied. We hold that the petition and supporting declaration must demonstrate that continued contact with the nonparent is necessary to prevent the identified harm. The focus is on the relationship between the nonparent and the child.

Applying this standard to the facts alleged in Ms. Harris's petition, we find that her petition fails to demonstrate that the child will suffer harm, or a substantial risk of harm, if the child is denied visitation with Ms. Harris. Ms. Harris incorrectly argues that the mother's choices are causing harm. She does not indicate how denying her own visitation causes this harm. Consequently, the trial court did not abuse its discretion in dismissing Ms. Harris's petition without a hearing.

## BACKGROUND

Eight-year-old A.A. lives with her mother, Alisha Presson, as primary custodian, and has visitation with her father, Richard Armstead, according to a parenting plan. Ms. Harris is the child's maternal grandmother. The child has never lived with Ms. Harris.

No. 37890-0-III
*In re Visits with A.A.*

During the summer of 2020, Ms. Harris filed a chapter 26.11 RCW petition for nonparental visitation with her granddaughter seeking alternating weekends, alternating summer weeks, Christmas and Christmas Eve, and attendance at all school and medical appointments. Mr. Armstead joined in the petition. Ms. Harris's petition affidavit alleged a "very close relationship" with A.A. where A.A. "come[s] to my house every weekend when she is not with her father." Clerk's Papers (CP) at 13. Ms. Harris indicated that she had seen A.A. only once in the last five months after getting into an argument with A.A.'s mother.

Although Ms. Harris did not allege that A.A. was being abused, she did allege that Ms. Presson was making poor parenting choices. She claimed that Ms. Presson was always on her phone, ignoring A.A., that Ms. Presson did not follow through with exercise therapy, and A.A. was missing too much school. Ms. Harris alleged that the mother was allowing A.A. to be around the mother's sister who had a history of drug use. Ms. Harris's declaration contained numerous hearsay statements by A.A. to support her position that A.A. wanted to live with Ms. Harris. Finally, Ms. Harris alleged:

> I am also concerned because Alisha always tells everyone that [A.A.] has special needs and is accident prone however, [A.A.] never gets hurt when she is with me or her dad, only when she is with Alisha. Alisha has blocked her whole family and she thinks someone is going to hurt her.

CP at 13.

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 37890-0-III
*In re Visits with A.A.*

Ms. Presson filed a response to Ms. Harris's petition. She denied Ms. Harris's allegations and asserted evidentiary objections to hearsay and child hearsay contained in the petition. Ms. Presson asserted that Ms. Harris failed to respect boundaries and has involved herself with A.A. in an unhealthy manner particularly since A.A. was injured. Ms. Harris falsely reported Ms. Presson and A.A. to the police for welfare checks in retaliation against Ms. Presson because she supports her sister in reclaiming custody of A.A.'s cousins from Ms. Harris. Also, Ms. Harris has inappropriately exploited A.A. by creating a foundation that is the subject of litigation. Ms. Presson argued that no harm resulted from a lack of visitation, but harm would be created by imposed visitation. Prior to the petition, any weekend time A.A. spent with Ms. Harris was the result of Mr. Armstead surrendering his parenting plan time to her. He has since been restrained by the court in the parental custody matter from doing so or allowing A.A. contact with Ms. Harris. The proposed nonparental visitation would eliminate a large portion of Ms. Presson's custody time and be used to render Ms. Harris a de facto parent outside the controlling statute.

Ms. Presson moved for a preliminary award of attorney fees, pursuant to RCW 26.11.050, and Ms. Harris claimed an inability to pay. The trial court issued a subsequent letter ruling on Ms. Harris's petition. Preliminarily, the court struck the

4

No. 37890-0-III
*In re Visits with A.A.*

hearsay statements from Ms. Harris's declaration and refused to consider them.[1]  The

court found that the remaining allegations failed to demonstrate that the petition was

likely to succeed at a hearing and dismissed the petition.  The court did not rule on Ms.

Presson's motion for attorney fees.

## ANALYSIS

Ms. Harris appeals, arguing that the trial court abused its discretion in finding that

her petition failed to demonstrate a likelihood of success at a hearing and dismissing her

petition at the preliminary stage.  She contends that her petition was sufficient to

demonstrate that A.A. would suffer harm, or a substantial likelihood of harm, if A.A. was

denied visitation with Ms. Harris.  We disagree and take this opportunity to provide

clarification on a petitioner's threshold burden of proof sufficient to necessitate a hearing

on the merits.

We begin by reiterating the strong presumption in favor of parental autonomy.

"Despite many parents being untrained, unprepared, and inept in the art and science of

raising a child, American law recognizes a natural [essential] right attached to the

biological processes of siring and bearing a child." *In re Custody of A.L.D.*, 191 Wn.

App. 474, 496, 363 P.3d 604 (2015).  The constitutionally protected interest of parents to

raise their children without state interference is one of the oldest fundamental liberty

---

[1] Ms. Harris does not assign error to the trial court's evidentiary decision to exclude hearsay statements from its consideration of Ms. Harris's petition.

No. 37890-0-III
*In re Visits with A.A.*

interests recognized by the Supreme Court under the Ninth Amendment to the United

States Constitution and the due process and equal protection clauses of the Fourteenth

Amendment. *Id*. at 495-96. Parents have a fundamental right to autonomy in child

rearing decisions. *In re Custody of Smith*, 137 Wn.2d 1, 13, 969 P.2d 21 (1998), *aff'd sub*

*nom. Troxel v. Granville*, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000) (plurality

opinion).

In 2005, our Supreme Court struck down Washington's former grandparent

visitation statute, RCW 26.09.240, as unconstitutional. Applying strict scrutiny, the court

held that the State can only interfere with parental decisions if such interference is

narrowly tailored to meet a compelling state interest. *Custody of Smith*, 137 Wn.2d at 15;

*In re Parentage of C.A.M.A.*, 154 Wn.2d 52, 57, 109 P.3d 405 (2005). A nonparent

seeking visitation "must show that denial of visitation would result in harm to the child

before a court could order visitation over the objections of a fit parent." *Parentage of*

*C.A.M.A.*, 154 Wn.2d at 61. A nonparent's ability to make a "better decision" is not

enough. *Custody of Smith*, 137 Wn.2d at 20.

From 2005 through 2018, no statutory basis existed for grandparents to petition for

visitation rights. In 2018, chapter 26.11 RCW, providing a basis for third-party

visitation, was enacted. LAWS OF 2018, ch. 183, § 2. This chapter acknowledges the

fundamental rights of parents to engage in child-rearing without state interference. Under

RCW 26.11.020(1) and .030(6), a petition for nonparent visitation must be accompanied

No. 37890-0-III
*In re Visits with A.A.*

by an affidavit asserting (1) that the petitioner and child have a substantial relationship, (2) the petitioner is a relative of the child, and (3) "[t]he child is likely to suffer harm or a substantial risk of harm if visitation is denied." The interplay of these statutes creates a threshold showing that must be made by a petition before a hearing is even held. Before setting a hearing on the petition, the trial court must find that the petition is more likely than not to succeed. RCW 26.11.030(8). In other words, a trial court must forecast the likely outcome of a hearing on the petition.

Only after a hearing on the petition is granted, does the court need to consider the parent's reasons for denying visitation. RCW 26.11.040(2). In doing so, the court must presume that a fit parent's "decision to deny visitation is in the best interest of the child and does not create a likelihood of harm or a substantial risk of harm to the child." *Id*. The presumption can be rebutted with clear and convincing evidence that "the child would likely suffer harm or the substantial risk of harm if visitation between the petitioner and the child were not granted." RCW 26.11.040(3). If the petitioner meets this burden of proof at a hearing and rebuts the presumption, then the petitioner must establish by clear and convincing evidence that visitation is in the best interest of the child. RCW 26.11.040(4). If the petitioner meets both of these burdens of proof, then the court should grant visitation. RCW 26.11.040(1)(a).

In this case, the trial court denied Ms. Harris's petition at the preliminary stage, finding that her petition was not likely to succeed and dismissing it without a hearing.

7

No. 37890-0-III
*In re Visits with A.A.*

The court found the allegations were insufficient to provide a threshold showing that the child would suffer harm, or a risk of harm, if visitation was denied.

We review the court's threshold decision for abuse of discretion. *In re Visits with R.V.*, 14 Wn. App. 2d 211, 219, 470 P.3d 531 (2020). "'A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons.'" *Id.* at 221 (internal quotation marks omitted) (quoting *In re Custody of L.M.S.*, 187 Wn.2d 567, 574, 387 P.3d 707 (2017)). A court acts on untenable grounds if the record does not support its factual findings, and it acts for untenable reasons if it uses "an incorrect standard, or the facts do not meet the requirements of the correct standard." *State v. Rundquist*, 79 Wn. App. 786, 793, 905 P.2d 922 (1995).

Since it became effective in 2018, the nonparental child visitation statute has had little opportunity for interpretation by the courts. At this time, there are no Washington cases interpreting the statutory requirement to demonstrate that denial of visitation will result in harm. However, in striking down the prior nonparental child visitation statute in 2005, the Supreme Court held that state interference with a parent's fundamental right to parent can only be justified in limited circumstances. "'[W]here a child has enjoyed a substantial relationship with a third person, arbitrarily depriving the child of the relationship could cause severe psychological harm to the child.'" *Parentage of C.A.M.A.*, 154 Wn.2d at 61 (quoting *Custody of Smith*, 137 Wn.2d at 20).

8

No. 37890-0-III
*In re Visits with A.A.*

The harm that must be alleged and substantiated is harm that the child will suffer if visitation is not granted. RCW 26.11.040(3). In other words, continued contact with the nonparent is necessary to prevent the harm alleged. This is different from arguing that the custodial parent is causing harm. Demonstrating harm from the denial of visitation should focus on the relationship between the petitioner and the child and the harm that will come to the child if they are denied contact with the petitioner. In other words, the petitioner brings something unique to the child without which the child would suffer harm. *See e.g.*, *Moriarty v. Bradt*, 177 N.J. 84, 118-19, 827 A.2d 203 (2003) (after children's mother died, maternal grandparents demonstrated that children would suffer harm if they were alienated from their mother's side of the family).

Ms. Harris argues that the trial court abused its discretion when it concluded that Ms. Harris failed to allege that the child would suffer harm or the risk of harm if visitation was not granted. On appeal, Ms. Harris contends that in her affidavit in support of the petition, she made the following allegations:

> I am also concerned because Alisha always tells everyone that [A.A.] has special needs and is accident prone however, [A.A.] never gets hurt when she is with me or her dad, only when she is with Alisha. Alisha has blocked her whole family and she thinks someone is going to hurt her.

CP at 13.

Ms. Harris's allegations claim that the mother is harming the child by making poor parenting choices. This is not the focus of the nonparental child visitation statute. If Ms.

No. 37890-0-III
*In re Visits with A.A.*

Harris believes that Ms. Presson is an unfit parent, then her remedy is to consider options other than a nonparent visitation petition. According to Ms. Presson, Ms. Harris has filed unsubstantiated claims with the police and Child Protective Services and has attempted to interfere in the custody matter with the father. This is one of the reasons Ms. Presson does not want her child around Ms. Harris. Regardless, the only allegation of harm by Ms. Harris is a vague statement that "[A.A.] never gets hurt when she is with me or her dad, only when she is with Alisha." CP at 13. Not only does Ms. Harris's allegation lack any specifics or details, she does not allege that denying her visitation will cause the child harm, nor does she indicate how granting her visitation will prevent the harm she claims is being caused by the mother. Even if Ms. Harris was granted visitation, the child would continue to reside primarily with the mother.

We conclude that the trial court did not abuse its discretion in finding that Ms. Harris failed to set forth facts sufficient to meet a threshold showing that she was likely to prevail on her petition for nonparent visitation.

Ms. Presson requests an award of reasonable attorney fees and costs on appeal under RAP 18.1(a) and RCW 26.11.050(1)(a). Under RCW 26.11.050(1)(a), the court shall order the petitioner to pay respondent's attorney fees before a hearing unless the financial resources of the parties make such an award unjust. Fees may also be awarded without consideration of finances upon a finding that the petition was filed in bad faith. RCW 26.11.050(1)(b).

10

No. 37890-0-III
*In re Visits with A.A.*

Much like in *Visits with R.V.*, Ms. Harris argues that RCW 26.11.050(1)(a) does not provide for an award of fees at the appellate level. 14 Wn. App. 2d at 228. However, "[w]hen a statute allows an award of attorney fees to a party at trial, the appellate court has inherent authority to make such an award on appeal." *Id.* (citing *Standing Rock Homeowners Ass'n v. Misich*, 106 Wn. App. 231, 247, 23 P.3d 520 (2001)).

Ms. Presson does not cross appeal the trial court's failure to award attorney fees under RCW 26.11.050. Additionally, she fails to adequately brief her request for attorney fees on appeal under RAP 18.1. Given the lack of precedential interpretation of the nonparental child visitation statute, we do not find Ms. Harris's appeal to be filed in bad faith. The award of attorney fees under RCW 26.11.050(1)(a) requires consideration of the parties' financial resources and Ms. Presson has failed to submit a financial affidavit as required by RAP 18.1(c). We decline to award Ms. Presson her attorney fees.

Affirmed.

_____
Staab J.

I CONCUR:

_____
Siddoway. C.J.

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 37890-0-III

PENNELL, J. (concurring) — I fully agree with the lead opinion in this case. I write separately to focus on the concept of "harm," and how that term is used in the nonparental child visitation statute (child visitation statute), chapter 26.11 RCW.

Parents have a fundamental constitutional right to autonomy in bringing up their children. *In re Custody of Smith*, 137 Wn.2d 1, 13, 969 P.2d 21 (1998), *aff'd sub nom. Troxel v. Granville*, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000) (plurality opinion). This means they generally get to decide who spends time with their kids. The State of Washington at times can interfere with a parent's decisions about their children's associations, but doing so requires compelling circumstances. *Id.* at 15. Specifically, justification requires showing a risk of harm to the child. *Id.* at 16.

The child visitation statute was written in an effort to accommodate parents' constitutional rights. When a relative seeks to require a parent to provide visitation against the parent's better judgment, there must be a showing of a risk of harm. As pointed out by the lead opinion, the type of harm at issue is not something posed by the parents themselves. The child visitation statute applies in the context of a "fit" parent. RCW 26.11.040(2). A parent who poses a risk of harm to their child is not fit and our laws provide protective measures for addressing unfit parents. *See* chapter 13.34 RCW (dependency and termination); RCW 11.130.185-.260 (minor guardianship). Rather than focusing on the relationship between a parent and child, the child visitation statute looks to the relationship between the child and the petitioning relative and asks whether the absence of this relationship will pose a substantial risk of harm to the child.

No. 378900-III
*In re Visits with A.A.* (Concurrence)

The child visitation statute does not define the term "harm." *See* RCW 26.11.010. We know from our case law that "harm" in this context is not simply the absence of a benefit. *See Troxel*, 530 U.S. at 63. Relationships between a child and extended family members are generally good things and bring added value to a child's life. *Id.* at 64. But the absence of that added value does not equate to harm. If relative visitation is to be compelled by the State, "there must be a showing of harm to the child beyond that derived from the loss of the helpful beneficial influence of" the child's relatives. *In re Marriage of Howard*, 661 N.W.2d 183, 191 (Iowa 2003).

It is also apparent that the term "harm" as used in this context does not contemplate physical harm. As noted, the focus of the child visitation statute is on the harm caused by separation. Physical harm requires personal contact. To obtain visitation under this statute, a petitioner must present evidence of a different type of harm.

Rather than the absence of a benefit, or the presence of physical harm, it is apparent that the type of harm contemplated by statute is emotional or psychological harm. Arbitrarily depriving a child of a relationship with a close family member can cause "severe psychological harm." *Custody of Smith*, 137 Wn.2d at 20. To qualify for relief under the child visitation statute, a relative petitioning for visitation must therefore allege and ultimately prove that denying visitation will cause a substantial risk of psychological or emotional harm to a child. RCW 26.11.030(5)(b), .040(1)(a).

2

No. 378900-III
*In re Visits with A.A.* (Concurrence)

Cases from other jurisdictions suggest the denial of visitation can cause psychological harm when a child and nonparent relative have developed a long-term emotional bond that would be emotionally traumatic to sever. *See Marriage of Howard*, 661 N.W.2d at 191; *Roth v. Weston*, 259 Conn. 202, 225-26, 789 A.2d 431 (2002); *Blixt v. Blixt*, 437 Mass. 649, 663-64, 774 N.E.2d 1052 (2002). Trauma might be especially likely when a child has experienced the death of a parent and continued contact with the deceased parent's family is necessary for grief and healing. *See Moriarty v. Bradt*, 177 N.J. 84, 117, 827 A.2d 203 (2003). This court has held that deprivation of heritage, alone, is insufficient to show harm under the child visitation statute. *In re Visits with R.V.*, 14 Wn. App. 2d 211, 225, 470 P.3d 531 (2020). But it is nevertheless a relevant consideration. Ensuring a child's connection to familial culture and heritage can sometimes be essential to reducing harm, such as when a child is navigating grief or a mental illness and the lack of visitation risks stripping the child of critical cultural connections and practices. *See, e.g., In re Matter of April S.*, 467 P.3d 1091, 1099-1100, 1100 n.2 (Alaska 2020) (Winfree, J., concurring) (describing the importance of cultural connections to the emotional well-being of Alaskan Native children); Melissa Tehee, Royleen J. Ross, Charlotte McCloskey & Iva GreyWolf, *Trauma-Informed, Culturally Relevant Psychological Responses in Cases of Missing or Murdered Indigenous Peoples*, 69 DEP'T OF JUST. J. FED. L. & PRAC. 251, 254–59 (2021) (discussing the importance of cultural connection for individuals dealing with trauma).

3

No. 378900-III
*In re Visits with A.A.* (Concurrence)


The child visitation statute is an important law that can provide security and assurance to children at risk of losing strong family bonds. However, the statute is not a lesser form of a guardianship action and it can apply only in limited circumstances where the constitutional rights of a fit parent are overcome by the State's interest in protecting children from traumatic emotional or psychological harm. With these observations in mind, I concur.

Pennell, J.

4